41    65
25a  645

41    65
124   535

ALONZO LEACH

*v.*

CHARLES N. PINE *et al.*

1. EXECUTION — *lien* — *levy.* The rule is unquestionable, that executions placed in the hands of a sheriff become liens on the personal property of the defendant in the county, in the order in which they were received, and these liens are perfected by a levy on such property ; other parties could not, under junior executions and liens, by obtaining possession of the property from the

custody of the sheriff by fraud, force or otherwise, obtain a priority of right to have their executions satisfied.

2. SAME — *tacking a junior to a prior execution.* Where a sheriff has a number of executions in his hands becoming a lien at different times, and the holder of one of the junior executions purchases two executions, being the first lien on the property, they have no right to tack their junior execution to the oldest execution, and have both satisfied to the exclusion of executions which are intermediate liens; but all should be satisfied in the order in which they became liens.

3. SAME — *levy — possession of property levied upon.* Where a sheriff has in his hands an execution, and levies upon personal property and reduces it to possession, it is then in the custody of the law, and it is not essential to the lien of other executions in his hands, or subsequently received, that they should be formally levied. The payment of the execution under which the levy was made would not affect the liens of the other executions; nor would another officer be authorized to take the property out of the hands of the sheriff to satisfy an execution in his hands. It would be the duty of the sheriff in such a case to retain and sell the property to satisfy such liens. The execution first coming to hand authorizes the seizure of the property, which creates the levy, and while it remains in his possession he is unable to seize it again.

4. LEVY — *property taken from the sheriff by another officer.* Where a sheriff has levied an execution and reduced the property to his possession, and the custodian into whose hands he has placed it, by collusion with another officer, surrenders it to him without the authority of the sheriff or plaintiffs in the executions in his hands, could not affect the liens of the executions in the hands of the sheriff.

5. DECREE — *satisfaction of execution liens.* It is error to decree a satisfaction of a junior execution, out of a fund produced by a sale of property upon which elder executions were prior liens, and to leave these prior liens unsatisfied.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. S. W. HARRIS, Judge, presiding.

This was a bill in equity filed by Alonzo Leach, in the Will Circuit Court, against Charles N. Pine, Joel George, John H. Quinn, Cephas H. Norton, Albert Jewett and Benjamin C. Busley. Subsequently the bill was amended. The bill was to subject a stock of hardware to sale on executions in the hands of complainant against J. H. Mills who had assigned the property for the benefit of his creditors, and to settle the rights of a

number of persons severally claiming to have superior liens on the property.

The property was sold under a stipulation of the parties that the fund should abide a final determination of the suit and be distributed under the decree thus rendered. Other parties filed their bill against the parties to this suit and others, claiming the proceeds of the sale. These suits were consolidated, answers filed and a hearing was had and the money decreed to Norton, Jewett and Busley. To reverse the decree this writ of error is prosecuted.

The facts of the case are stated in the opinion of the court.

Mr. H. SNAPP and Mr. R. E. BARBER, for the plaintiff in error.

Mr. J. H. KNOWLTON, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Some time in the early part of February, 1859, J. H. Mills, who was then engaged in the business of merchandising, in the city of Joliet, made an assignment of his stock and assets, to J. H. Quinn and Joel George, for the benefit of his creditors. On the 10th day of February, 1859, Norton, Jewett and Busley recovered a judgment in the United States Circuit Court for the Northern District of Illinois, for the sum of $2,451.00, and an execution was issued to the United States Marshall. They, on the 14th day of February, filed their bill in chancery in the District Court, in aid of their execution, making Quinn and George defendants, setting up the levy, and alleging that the transfer by Mills to the assignees was fraudulent, praying that the assignment might be held to be fraudulent, and the property sold to satisfy their execution. This bill was afterward dismissed.

Alonzo Leach, the sheriff of Will county, on the 23d day of February, 1859, filed a bill of complaint against Charles N. Pine, Joel George, John H. Quinn, Cephas H. Norton, Albert

Jewett and Benjamin C. Busley. On the 21st of March following, by leave of court he filed an amended bill. The bill and amended bill allege that he, as sheriff of Will county, by virtue of several executions against Mills, levied upon a stock of hardware, on the third day of February, 1859, and took the same into possession. The bill alleges that Charles H. Pine, in the absence of complainant, fraudulently obtained possession of the goods; that, by virtue of such executions and levies, he, as sheriff of Will county, had advertised the goods for sale; that Norton, Jewett and Busley, in violation of an injunction granted under the original bill, had commenced a suit in replevin in the Circuit Court of the United States, to recover the possession of the goods; and that one Boyer and Bushnell had taken forcible possession of the stock of hardware, and deprived complainant of possession, and prayed a further injunction, which was granted.

Afterward, the parties entered into a stipulation, that the goods be sold, and, on a final determination of the matter, the proceeds of the sale be distributed according to the rights of the parties. Norton, Jewett and Busley then filed their bill in chancery in the Will Circuit Court, against Mills, the debtor, Leach, the sheriff, the assignees, Henry K. Stevens, Elizabeth Mills, B. U. Sharp, George Allen, George N. Sharp and S. O. Simonds, creditors. By these two bills, all of the parties in interest were before the court. And by a subsequent stipulation the two cases were consolidated. And Norton having in the meantime died, an order was made that the suit progress in the name of the survivors.

On the hearing, it appeared that S. O. Simonds, on the 19th day of January, 1859, issued an execution on a judgment for $315 and costs, which he had recovered in the Cook County Court of Common Pleas, against Mills, and directed to the sheriff of Will county, and which came to his hands and was levied on the goods in controversy on the 20th day of that month. Also another execution from the same court for the sum of $150.57 and costs, directed to and received by the sheriff of Will county, which came to hand on the 21st of

January, 1859, and was on the same day levied on the same stock of goods, and another from the same court, directed to and received by the same sheriff on the same day and levied on the same goods, for the sum of $83.14 and costs. And he on the same day received and levied on the same goods another execution from the same court, for two hundred and twenty-one dollars and seventy-five cents and costs. All of these executions were in favor of Sharp, and Sharp and Allen, and against Mills.

Also another execution in favor of Elizabeth Mills and against John H. Mills, on a judgment recovered in the same court, for the sum of $1,325, dated January 19, 1859, and which came to the hands of Leach as sheriff, on the 3d day of February, 1859, and was levied on this stock of hardware on that day. Likewise, another execution on a judgment recovered in the Will Circuit Court for $344.43 and costs, in favor of Henry K. Stevens and against Mills, which came to the hands of the sheriff and was levied on the stock of hardware on the 3d day of February, 1859. It appears from the evidence that these several levies were never released, set aside or discharged.

On the hearing, the court below decreed that the money in the hands of the sheriff be paid to Norton, Jewett and Busley, and that the sheriff deliver over to them all or any lands or securities for the payment of money, given or executed for the purchase of property at the sale. And the case is now brought to this court and a reversal is asked on several grounds, the principal of which is that the decree is inequitable and unsupported by the evidence.

The proposition will not be questioned, that all executions coming to the hands of the sheriff became liens on this property in the order in which they were received, and it is equally true, that, by the various levies made by the sheriff, these liens were perfected and fully consummated, as against all other subsequent liens whether by execution or otherwise. When the sheriff completed his levies by seizing the property and reducing it to possession, other parties having junior executions

and liens could not gain a preference by obtaining possession
by force, by fraud, or, in fact, by any means except on the aban-
donment of the former levies, or by such liens being satisfied
and discharged. The executions, then, in this case, became
liens in the order in which they came to the hands of the
sheriff. And it appears that the execution of Norton, Jewett
and Busley was last delivered to the officer to execute, and the
lien created by it was junior to all of the others. But it is
insisted that the sheriff, after it was levied, abandoned the prior
levies made by him, and that Norton, Jewett and Busley's exe-
cution thereby became preferred to the others. We will proceed
to examine that question, as upon it the whole controversy
turns.

The testimony of Smith and Bushnell seems to establish the
fact that there was, when they first called on Leach, two exe-
cutions in his hands, one in favor of Smith and Goodell and
the other in favor of the Merchants and Drovers' bank, and
both of them levied. Also, that there were other executions
in his hands, but which, as they testify, the sheriff said were
not levied. They further testify that Bushnell purchased
the first two executions and had them assigned. Bushnell says
they amounted to about six hundred dollars. He further states
that Leach said he was not going to levy the other executions,
as if the assignment was valid there was nothing to levy upon,
and if it was not, they were liens upon the property. Opposed
to this is the affidavit of Leach, his deputy, and of Mills that
these executions were levied, and the indorsements on the exe-
cutions show that they were levied, perhaps, as early as this
conversation occurred.

While the purchaser of the Smith and Goodell and the Mer-
chants and Drovers' bank executions was substituted to the
prior lien created by their levy on the goods, he did not have
the right to tack to these executions that of Norton, Jewett
and Busley and cut off the prior liens of the other executions
to that of the lien of Norton, Jewett and Busley.

When a sheriff has in his hands an execution, and levies upon
property and reduces it into possession, he then has it in the

custody of the law, and it is not essential to the lien of other executions in his hands at the time, or subsequently received, that they should be levied. The discharge of such a levy by the plaintiff in execution, or by the payment of the execution by the defendant, would not, in the least, change the liens of the executions in the hands of the sheriff and not levied, nor would it authorize the defendant to resume possession of the property levied upon, nor would it authorize another officer having a junior execution to take the property out of the hands of the sheriff to satisfy his execution. But, in such a case, it would be the duty of the sheriff to retain the property under the liens of the other executions, and he may indorse a levy on them if he choose, and should sell the property to satisfy such liens. The first execution justifies the seizure of the property, and, when satisfied or otherwise discharged, the subsequent executions authorize and require him to retain and sell it for their satisfaction. Having already seized the property when he made the levy, he is unable to do so again while it is in his possession. And the seizing of the property and reducing it to possession is the levy, and the execution authorizes and requires it, and the indorsement is only the evidence of the fact.

It is clear, from the evidence of Smith and Bushnell, that the levy had been made, and that the sheriff was then in the possession of the property, and that other executions were then in his hands which he claimed were also a lien on the property, subject to the executions under which it had been seized. And we infer from the record, although the case has not been prepared so as to leave it without doubt, that these executions were those levied on the 19th and 20th of January and the 3d of February. If so, nothing that was subsequently done could in any manner have changed or defeated the lien that was created by placing them in the hands of the sheriff.

The obtaining possession under the execution in favor of Norton, Jewett and Busley, whether by fraud on the part of Bushnell, or by collusion of the custodian and the assignees with the marshal could not, without the assent of the sheriff or of

the several plaintiffs in execution, in the slightest degree preju-
dice the liens of these execution creditors. And there is no
pretense that the sheriff voluntarily parted with the possession
of the property, and, in the absence of all evidence, we will not
conclude that he voluntarily rendered himself liable for the
amount of these several executions by parting with property
held for their satisfaction. Nor is there any evidence in the
record from which it may be inferred, that any of the judg-
ment creditors released their liens under their executions.

The evidence seems to be abundant, that the judgment in
favor of Elizabeth Mills was fraudulent, and, if so, the execu-
tion would also be void and of no effect. The court, therefore,
did right in excluding it from all participation in the fund.
But the decree was erroneous in preferring the execution of
Norton, Jewett and Busley to the others.

Upon this record, it would have been proper, if set up by the
pleadings, that the assignee of the executions in favor of Smith
and Goodell and the Merchants and Drovers' bank, if still
unpaid, should have been first satisfied out of the fund as a first
lien; then to have paid the other executions in favor of
Simonds, Sharp & Allen, and Stephens, in the hands of the
sheriff, excluding the execution in favor of Elizabeth Mills, in
the order in which they came to his hands; and, lastly, the
remainder of the fund, if not more than necessary for the
purpose, to the execution in favor of Jewett and Busley,
survivors, etc.; and, if any surplus, to pay it to the assignees.

No question arises on the assignment, as the property was
sold and a distribution was to be made by the terms of the
stipulation of the parties. It was a technical error, but per-
haps not such as to require a reversal, that the decree was in
favor of Norton, who was dead. It was an inadvertence not
likely to again occur. The decree is reversed and the cause
remanded.

*Decree reversed.*