LYMAN EVERINGHAM

*v.*

THE NATIONAL CITY BANK OF OTTAWA.

*Filed at Ottawa May 9, 1888.*

1. EXECUTION LIEN—*as to personal property—of the rule of priority where there are several executions.* As to personal property, the general rule is, that executions are to be satisfied in the order of their priority, the first writ delivered to the officer taking precedence as the first lien, and the others following in the order in which they are received. This rule obtains even though the first seizure may have been made on a subsequent execution. So, also, a *fieri facias* delivered to a sheriff takes precedence of an attachment levied before it, but after such delivery.

2. If the officer has more than one execution in his hands, he should apply the proceeds of the sale of personal property on the elder writ, for the sale is not for the benefit of the particular writ which is first levied or under which the sale is made, but for the benefit of all the writs in his hands, in the order in which they rank as liens upon the personalty.

3. SAME—*whether priority lost in favor of other creditors.* As the object of an execution is to obtain satisfaction of the judgment on which it issues, it follows that any act of the creditor, or directions from him to the sheriff, diverting a prior execution from this purpose, renders it dormant, and inoperative against other creditors, and clothes them with priority. This doctrine had its origin in the statute of 13 Elizabeth, chapter 5.

4. It has been deduced from this statute, that any attempt to make use of an execution, even without any actual fraudulent intent, for purposes of security, merely, is a perversion of the writ, and renders it constructively fraudulent as to junior executions and writs. It has been remarked, however, that there is no settled rule whereby it may be determined when a senior writ loses its preference, but each case must be determined by its own peculiar circumstances.

5. SAME—*the particular case.* A judgment was obtained against two parties, and execution was sued out, the plaintiff directing the sheriff to levy the same on land which one of the debtors had conveyed to a third person, and also filed his bill in aid of such levy. It did not appear that the plaintiff, at the time of the levy, had notice of the existence of personal property of the debtors. Afterward the plaintiff sued out an attachment against one of the same debtors, and directed the officer to levy the same on personal property. Afterward, but in the life of the execution, the plaintiff released his levy on the land, and had his execution levied on personal property: *Held,* that by the levy on the land and the levy of the attachment, the plaintiff did not lose the prior lien of his execution in favor of other execution and attaching creditors.

6. ATTACHMENT—*order of distribution among judgment creditors.* A plaintiff recovered two judgments for the same debt, the one upon the real indebtedness, and the other upon a note given by his debtor with another as surety, which was given as collateral security for the payment of the original debt. These and other judgments were recovered at the same time, in attachments and other actions against the same debtor: *Held,* that the holder of the two judgments was entitled to distribution of the proceeds of the property attached upon the first judgment, but not upon the other, it being for the same debt.

7. It is plainly the intention of section 41 of the Attachment act, that all creditors who obtain judgments at the return term or terms in which judgment in the first attachment is recovered, shall be placed upon an equality, and that the proceeds of the property attached shall be distributed

among them equally and impartially, in proportion to the different amounts of their respective debts. But a creditor having two judgments for the same debt is not entitled to an equal distribution on each, as against the other creditors.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. Charles Blanchard, Judge, presiding.

Messrs. Duncan, O'Connor & Gilbert, for the appellant:

The delivery of an execution to an officer, with instructions to do nothing under it, is really no delivery, and confers no rights upon the creditor. Freeman on Executions, sec. 206; *Gilmore* v. *Davis*, 84 Ill. 487; *Korn* v. *Roemheld*, 6 Bradw. 275; *Baldwin* v. *Freydendall*, 10 id. 106; *Kellogg* v. *Griffin*, 17 Johns. 274; *Knower* v. *Bernard*, 5 Hill, 377.

An execution is subject to the plaintiff's control, and the officer is bound to follow all of the plaintiff's directions not savoring of undue rigor and oppression. Freeman on Executions; *Godfrey* v. *Gibbons*, 22 Wend. 569; *Reddick* v. *Cloud's Admrs.* 2 Gilm. 670; *Morgan* v. *People*, 59 Ill. 58.

A levy upon personal property of sufficient value to satisfy the writ, is a satisfaction of the judgment. Freeman on Executions, sec. 269; *Martin* v. *Charter*, 27 Ill. 294; *Ambrose* v. *Weed*, 11 id. 489; *Montgomery* v. *Wayne*, 14 id. 374; *Smith* v. *Hughes*, 24 id. 276; *Trenary* v. *Cheever*, 48 id. 28; *Harris* v. *Evans*, 81 id. 419.

A senior execution creditor has no right to shift his levies to the prejudice of subsequent creditors who have acted on the faith of his action. *Smith* v. *Hughes*, 24 Ill. 276; *Dean* v. *Patten*, 13 S. & R. 345.

A party can not occupy inconsistent positions. Bigelow on Estoppel, 480, 562, and cases cited.

An attaching creditor is estopped from claiming absolute ownership of the property as against subsequent attaching creditors. *Vameter* v. *Crossman*, 42 Mich. 465.

One consenting to an act is estopped from denying its validity. *Truesdail* v. *Ward*, 24 Mich. 117.

A first attachment operates as the appropriation of the property for the benefit of all the attachments, etc., running to the same terms. *Smith* v. *Bridge Co.* 13 Bradw. 572; *Pollack* v. *Slack*, 92 Ill. 221.

Appellant was entitled to a distribution upon both his judgments.

Mr. D. B. SNOW, and Messrs. MAYO & WIDMER, for the appellee:

In all cases where the first execution has lost its preference, something was said by the plaintiff or his attorney from which the sheriff could reasonably infer that he was authorized to give indulgence. *Bank* v. *Brown,* 6 Hill, 232.

In the case cited, the goods remained unsold over a year after the levy, and it was urged that because of such delay the execution was postponed, and lost its priority. But the court held that such delay worked no postponement. To the same effect, embodying a full discussion, are *McCoy* v. *Reed,* 5 Watts, 300; *Howell* v. *Alkyn,* 2 Rawle, 285; *Brown's Appeal,* 26 Pa. St. 490.

Counsel concede that a levy upon real estate, sufficient to satisfy the debt, does not, as in case of levy on personal property, operate, even *prima facie,* as a satisfaction of the execution. Such levy upon real estate does not even suspend the writ, nor does it, while undisposed of, operate to bar collection in any other manner. *Herrick* v. *Swartwout,* 72 Ill. 340; *Gregory* v. *Stark,* 3 Scam. 611; *Gold* v. *Johnson,* 59 Ill. 62; *Robinson* v. *Brown,* 82 id. 280.

As to successive levies upon the same writ, it is laid down in Freeman on Executions, (sec. 253,) that "even where an officer, in the first instance, finds sufficient property, various causes may arise prompting him to levy upon a part, only. The levy upon this part is no waiver of the right to make a

further levy at a subsequent period. In fact, the general rule prevails, without exception, that an officer, notwithstanding this prior levy, has, at any time before the return day, the power to make such further seizure as may be necessary to satisfy the plaintiff's debt." *Montgomery* v. *Wayne,* 14 Ill. 373; *Marshall* v. *Morris,* 13 Ga. 185; *Debrack* v. *Myrick,* 6 id. 410; *Hammond* v. *Myrick,* 14 id. 77; *Hogshead* v. *Carruth,* 5 Yerg. 227.

By the law of the liens of executions, it is of no consequence under which execution, whether junior or senior, a levy and sale are made. It is the duty of the sheriff to distribute the proceeds of the sale between the several writs that may be in his hands, according to their priority. Freeman on Executions, sec. 196; *Rogers* v. *Dickey,* 1 Gilm. 636.

Per CURIAM: We have given careful consideration to the very full and exhaustive arguments, both oral and written, made in this case, and having done so, we are satisfied that the following opinion of the Appellate Court states the points in contention, and the law applicable thereto, with such fullness and accuracy that no useful end can be subserved by writing another opinion, and for the reasons there given the judgment of the Appellate Court is affirmed.

BAKER, J.: In February, 1884, William Butters executed to Ann Armour a mortgage upon 207 acres of land in LaSalle county, to secure the payment of $3000 in five years, with seven per cent interest, and said mortgage is still a valid and subsisting lien upon said land.

On February 9, 1887, the firm of Nash, Wright & Co. obtained a judgment by confession in the circuit court of La Salle county, for $3626.21 and costs, against said William Butters and James R. Butters, and on the same day execution was issued on the judgment, and levied on the real estate above mentioned; and at the date of the hearing in the circuit court, of the matter at bar, there was still due and unpaid upon said judgment the sum of $1700.

On February 11, 1887, said William Butters executed to one John H. Druitt a warranty deed to said land, for the expressed consideration of $12,000, which deed was duly filed for record on the next day.

On February 14, 1887, the National City Bank of Ottawa recovered a judgment by confession, in the circuit court of LaSalle county, against William Butters and James R. Butters, for $3102.22 and costs, upon which execution was issued on the same day, and placed in the hands of D. B. Snow, the plaintiff's attorney, who directed the sheriff to levy it upon said 207 acres of real estate, and informed the sheriff that he was about to file a bill in chancery in aid of the levy. No other directions were given to the sheriff concerning this execution until March 11, 1887, as hereinafter mentioned. On the same day the National City Bank, by the same attorney, filed a bill in chancery, in the circuit court, in aid of the levy, alleging that the title to this real estate had been in the defendant William Butters, but that said William Butters had made a fraudulent conveyance thereof to John H. Druitt. The bill also alleged that the defendants in the execution had no other property subject to execution, of sufficient value to satisfy the judgment. The prayer of the bill was, that the conveyance from Butters to Druitt be adjudged fraudulent and void, and that the land be subjected to sale under the execution. This bill was prosecuted until March 25, 1887, when it was dismissed without prejudice.

On February 16, 1887, the National City Bank of Ottawa, by the same attorney, commenced a suit in attachment, in the circuit court, returnable to the March term, 1887, against James R. Butters, for $1000, and on the same day, D. B. Snow, the plaintiff's attorney, delivered the writ of attachment to the sheriff, and directed him to levy it upon the personal property the proceeds of which are now in controversy, which the sheriff accordingly did. Judgment for $1000 and costs was duly entered against the defendant on the 22d day of March, 1887.

On February 18, 1887, Lyman Everingham commenced an action of assumpsit by *capias*, in the circuit court, against William Butters and James R. Butters, returnable to the March term, 1887, upon which such proceedings were had that on March 21, 1887, the *capias* was quashed and judgment entered against the defendants for $5077.77 and costs, upon which execution was issued, and returned no property found or money made. The judgment was rendered upon a promissory note executed by the defendants January 11, 1887, as collateral security for moneys to be thereafter advanced by the plaintiff to James R. Butters, which moneys formed the consideration of the judgment next hereinafter mentioned.

On March 2, 1887, Lyman Everingham commenced, in the circuit court, a suit in attachment, returnable to the March term, 1887, against James R. Butters, and the writ issued in that suit was, on the same day, levied upon the same personal property which had been levied upon under the attachment of February 16, 1887, in favor of the National City Bank. Judgment for $5420 and costs was duly entered in this suit on March 16, 1887, and a special execution was issued, under which the property attached was sold.

On March 11, 1887, the National City Bank, by its attorney, directed the sheriff to levy the execution of February 14, 1887, for $3102.22, upon the personal property which had been levied upon under the writs of attachment, which the sheriff accordingly did, and the property was sold under that execution, as well as under the special execution in favor of Everingham, on the 26th day of March, 1887, the amount realized by the sale being $4318.80, and after deducting all costs and expenses, there was left in the sheriff's hands, for distribution to the judgment creditors, the sum of $4174.16.

On March 25, 1887, the attorney of the National City Bank directed the sheriff to release the levy on the real estate, and dismissed the bill in chancery without prejudice, and on March 26, 1887, Everingham filed his bill in chancery to set aside the

sale of the real estate from William Butters to John Druitt, and to subject the land to the satisfaction of his judgment for $5077.77, against William Butters and James R. Butters.

Upon the foregoing facts it was claimed by Lyman Everingham, that although the execution of February 14, 1887, for $3102.22, in favor of the National City Bank, was the first writ placed in the sheriff's hands, yet, by reason of the directions given to the sheriff, by its attorney, to levy on the real estate, the prosecution of the bill in chancery in aid of the levy, and the levy made February 16, 1887, upon the personal property, by direction of its attorney, under its own writ of attachment, which was junior to its execution of February 14, 1887, the lien of the latter writ was voluntarily waived or suspended, and that the proceeds of the execution sale should therefore be applied *pro rata* upon the judgment of $1000 in favor of the bank, and the judgments of $5420 and $5077.77 in favor of Everingham, and that no portion of the proceeds should be applied upon the execution of February 14, 1887, for $3102.22. But the court below held that the judgment for $3102.22, in favor of the bank, must first be paid in full, and that, inasmuch as Everingham's judgment of $5077.77, against William Butters and James R. Butters, was merely collateral security for the judgment of $5420 against James R. Butters, only the latter judgment could participate in the proceeds, and that therefore the balance of the fund, after paying the said judgment of $3102.22, should be applied *pro rata* upon the judgment of $1000 in favor of the bank, and that of $5420 in favor of Everingham. This action of the court, it is insisted, was erroneous, and in support of such position the following propositions are urged:

*First*—That any directions, express or implied, given by plaintiff to the sheriff, by reason of which a levy upon property under an execution is delayed, operate, while such directions are in force, to suspend the lien of the writ.

*Second*—That the directions given by Snow, the attorney of the National City Bank, to the sheriff, were equivalent to

directions not to levy upon the personal property in question until March 11, 1887, and therefore operated to suspend the lien of the execution until that date.

*Third*—That the conduct of the bank's attorney, from February 14 to March 11, is conclusive evidence that during that time it was not seeking to enforce the execution of February 14 against this personal property, and therefore the lien of the execution upon it during that time was suspended.

*Fourth*—That the levy on the real estate, and the filing of the bill in aid, were inconsistent with a levy on the personal property, and therefore suspended the lien.

*Fifth*—That the action of the bank with respect to its levies being such as would have a tendency to mislead and hinder Everingham in the collection of his debt, the bank is estopped from asserting a right to levy on the personal property under its senior execution.

*Sixth*—That the judgment of $5077.77, in favor of Everingham, was one upon which Everingham was entitled to a *pro rata* share of the fund.

In respect to personal property, the general rule is, that executions are to be satisfied in the order of their priority, the writ first delivered to the officer taking precedence as the first lien, and the others following in the order in which they are received. This rule obtains even though the first seizure may have been made on a subsequent execution, and if the sheriff has more than one execution in his hands, he should apply the proceeds of sale on the elder writ, for the sale is not for the benefit of the particular writ which is first levied or under which the sale is made, but for the benefit of all the writs in his hands, in the order in which they rank as liens upon the personalty. So, also, a *fieri facias* delivered to a sheriff takes preference of an attachment levied before the *fi. fa.*, but after such delivery. Freeman on Executions, sec. 196; Herman on Executions, sec. 183; *Rogers* v. *Dickey*, 1 Gilm. 636; *Leach* v. *Pine*, 41 Ill. 65; *Lawrence* v. *McIntire*, 83 id. 399.

This much seems to be conceded in this case, but the contention of appellant is, that as the attorney for appellee gave to the sheriff a description of the real estate, and told him to levy appellee's execution thereon, and at the same time informed him that he was about to file a bill in chancery in aid of such levy, and actually did file such bill, therefore appellee lost the right to levy its senior execution on the personal property and assert a priority over the junior writs, because the levy on real estate, and the exhibiting of the bill in aid, were inconsistent with a levy on the personal property and a suspension of the lien of the senior execution.

It is well settled doctrine, that as the object of an execution is to obtain satisfaction of the judgment on which it issues; therefore any act of the creditor, or directions from him to the sheriff, diverting the execution from this purpose, renders it dormant and inoperative against other creditors, and clothes them with priority. (*Gilmore* v. *Davis,* 84 Ill. 487; *Koren* v. *Roemheld,* 6 Bradw. 275; *Kellogg* v. *Griffin,* 17 Johns. 274; *Knower* v. *Bernard,* 5 Hill, 377.) This doctrine had its origin in the Statute of 13 Elizabeth, chapter 5, which provided that executions taken out with intent to hinder, delay or defraud creditors, or others, should be, as against the person sought to be hindered, delayed or defrauded, utterly void. It has been deduced from this statute, that any attempt to make use of an execution, even without any actual fraudulent intent, for purposes of security merely, is a perversion of the writ, and renders it constructively fraudulent as to junior executions and writs. It has been remarked that there is no settled rule whereby it may be determined when a senior writ loses its preference, and that each particular case must be determined by its own peculiar circumstances.

Under the circumstances of the case in hand, the bank was guilty of no improper use of the process of the court, and by its conduct waived no legal right or lost no lien. Immediately upon recovery of judgment it sued out a *fieri facias,* and had

it levied upon real estate, and on the same day filed a bill in chancery in aid of the levy, for the purpose of setting aside what it supposed to be a fraudulent conveyance of the land. It used unusual zeal and diligence in getting service and pressing the suit in aid.

The allegations of the bill were, that William Butters had not sufficient personal property to satisfy the execution, and that James R. Butters had not sufficient property liable to execution to satisfy the judgment, and that he was virtually insolvent.   It does not appear that at the time of the levy on real estate the bank had any actual notice of the personal property which was afterward seized and sold, or of its value. It may be the levy on the land was not the most effective way in which the bank could have proceeded in order to make its money, and make it as quickly as possible; but probably it was not then advised of any more promising mode of procedure. In any event, what it did was in furtherance of the object of the writ to enforce payment of its judgment.   Neither the bank nor its attorney directed the sheriff not to levy on personal property.   The bill in equity could only be prosecuted upon the theory, the personal property the defendants in execution had was insufficient to satisfy the debt; and had the bank known there was sufficient of such property, it would clearly have been inconsistent in it to both file the bill and levy on the personalty.   But that is not the standpoint from which this case is to be regarded, for appellee was proceeding, as is shown by the allegations of the bill, upon the theory of an insufficiency of personalty, and there is nothing in the record to indicate it was not acting in good faith.   Besides this, a levy on real estate, even of value sufficient to pay the debt, is not *prima facie* a satisfaction of the execution.   The levy, therefore, did not prevent the sheriff from seizing other property under the writ, and selling it.   It will not do to say that whenever an execution is, by direction of a plaintiff, levied on certain property, such levy is effective to suspend the lien

of the writ in respect to all other property of the defendant in execution.

Even in regard to personalty, where a levy sufficient to pay the indebtedness operates *sub modo* as a satisfaction, it may turn out the property seized belongs to another person, or is exempt from forced sale, or is insufficient to satisfy the debt, or is removed from the possession or control of the sheriff by the act of the defendant in execution. The rule prevails, without exception, that an officer, notwithstanding a prior levy, has, at any time before the return day, power to make such further seizure as may be necessary to satisfy the plaintiff's debt. (Freeman on Executions, sec. 253; *Montgomery* v. *Wayne,* 14 Ill. 373.) But here, as the first levy was upon real estate, the case is all the stronger for appellee, as such levy, regardless of the question of value of property, did not, like a levy on sufficient personal property, operate, while undisposed of, as such a satisfaction of the judgment as to bar an attempt to enforce collection in any other manner. *Herrick* v. *Swartwout,* 72 Ill. 340.

In *Deloach & Wilcoxson* v. *Myrick,* 6 Ga. 410, a *fieri facias* had been levied on lands, and the levy afterwards dismissed by order of plaintiff's attorney, and a levy made upon a negro boy, and intermediate the two levies the boy had been sold to Deloach & Wilcoxson, and it was decided they could not hold the boy as against the lien of the plaintiff in execution. See, also, *Hammond* v. *Myrick,* 14 Ga. 77; *Hogshead* v. *Carruth,* 5 Yerg. 227.

The logic of appellant's claim made herein, would lead to the conclusion that a direction to levy upon particular property would be effective to suspend the lien of the execution as to all other property of the execution debtor. Herein, we think, lies the fallacy of his argument. It is true that from February 14 to March 11 the bank was not seeking to enforce its execution of February 14 against the personal property upon which it was subsequently levied, but, in our opinion, the con-

clusion does not follow therefrom that during that time the lien of the execution was dormant, and constructively fraudulent as to such personal property. That which the rule deduced from the Statute of Elizabeth is leveled against, is the perversion of the writ of *fieri facias* from its legitimate purpose of enforcing payment, and there is no such perversion when there is an absolute intention of collecting the judgment, and a levy is made in good faith, which is afterward abandoned and a new levy made on other property upon discovery of the fact the first levy is, or probably will prove to be, ineffective. In this case, the bank seems to have been more than ordinarily diligent and industrious in its efforts to enforce payment through its senior execution. At the time of the levy on the land it was already incumbered by a valid mortgage lien and a prior judgment lien, amounting together to about one-half its value. As soon as it was ascertained from the depositions taken in the chancery suit, that the conveyance to Druitt was probably *bona fide* and for a valuable consideration, the bank forthwith directed a levy upon the personal property, and shortly thereafter released the levy on the land, and dismissed its bill in aid of such levy. The fact that the bank supposed, at the time of the first levy, and for a month thereafter, that it would be able to make its debt out of the realty, and did not, during that time, either intend or seek to subject the personal property in satisfaction of such debt, was not an abuse of the process of the court. The law does not punish the plaintiff in senior execution for making an ineffectual levy, by forfeiting his prior lien upon all property not included in such levy. All that it requires of him is, that he should act in good faith, and retrace his steps during the lifetime of his senior execution, and before the personal property has been actually sold by virtue of a junior writ.

If we are right in our conclusion, then appellant can take nothing by his claim that the direction to the sheriff to levy the bank attachment writ of February 16 upon the personal

property, was, by necessary implication, a direction to do nothing to overthrow the effect of that levy, and therefore a command not to levy the senior execution upon it. Besides this, as is well answered by appellee, in no other certain way than by this attachment could the bank share *pro rata* with other creditors of James R. Butters in any surplus of proceeds of sale of the personal property levied upon, over and above the amount sufficient to satisfy its senior execution of February 14.

It is further objected to the order of distribution made by the circuit court, that the Everingham judgment for $5077.77 was a judgment upon which he was entitled to receive a *pro rata* share of the fund derived from the sale of the personalty. Appellant bases his claim in this regard upon two grounds: One is, that section 37 of the Attachment act, without any ambiguity of language, provides, in express terms: "All judgments in attachment against the same defendant, returnable at the same term, and all judgments in suits by summons, *capias* or attachment against such defendant, recovered at that term or at the term when the judgment in the first attachment upon which judgment shall be recovered is rendered, shall share *pro rata*, according to the amount of the several judgments, in the proceeds of the property attached, either in the hands of a garnishee or otherwise."

The other ground relied upon is, that Everingham held the note upon which the $5077.77 judgment was rendered, as collateral security for the James R. Butters indebtedness to him, and that he should be permitted to enjoy the benefit of the right, for which he contracted, to pursue both his remedies, until the amount actually due him is paid, and that otherwise the security which he supposed he obtained is rendered nugatory, and the judgment which he holds as security is declared canceled.

Section 41 of the Attachment act provides that the act shall be construed in all courts in the most liberal manner for the detection of fraud. In *Hannibal and St. Joseph Railroad Co.*

v. *Crane*, 102 Ill. 249, it was held that our statute relating to attachments, from its provisions and the spirit of the whole act, is entitled to and should receive a liberal and not a strict construction. It is plainly the intention and policy of the statute that all creditors who avail themselves of the right given to participate in the proceeds of the property attached, by recovering judgment in conformity with the requirements of the statute, shall be placed upon an equality, and that the proceeds of the property attached shall be distributed among them equally and impartially, in proportion to the amounts of their respective debts.

There was but one indebtedness due from James R. Butters to appellant, and that was merged in the judgment of $5420, and the order of distribution made by the court directed that such judgment should receive its *pro rata* share of the residue of the fund left after paying off the execution, which was a prior lien upon the fund. The judgment of $5077.77 against William Butters and James R. Butters was a mere collateral security for the judgment against James R. Butters alone. The security it afforded consisted of the liability it imposed upon William Butters for the payment of the debt of James R. Butters. In respect to James R. Butters, it was but a second judgment for the same debt. It would be a plain evasion of the intendment of the statute, and a fraud and wrong upon the rights of other creditors, if one creditor should be allowed to recover separate judgments against the common debtor upon divers evidences held for one and the same debt, and then be permitted to receive a *pro rata* dividend upon each of such judgments. Such an interpretation of the statute would be a prolific source of fraud and injustice, and would render inoperative the legislative intention. We think the order of the court in the premises was right.

We find no error in the record, and the judgment will be affirmed.

*Judgment affirmed.*