### EXCELSIOR NEEDLE CO. v. GLOBE CYCLE WORKS.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1900.)

EXECUTION—LEVY—WITHDRAWAL—EFFECT.

Where after a sheriff had levied execution on stock, machinery, and fixtures in a manufacturing plant, and on a store under direction from the creditor to withdraw his deputies from the premises and from the store, but to retain a levy of the machinery and fixtures, he being relieved from responsibility for the safe-keeping of said machinery and fixtures, he withdraws his deputies, and the debtor continues to run its manufactory and its store, selling its goods, the execution becomes dormant, as against subsequent execution creditors, as to the machinery and fixtures.

Appeal from special term, Erie county.

Action by the Excelsior Needle Company against the Globe Cycle Works. From an order directing the sheriff to pay plaintiff's executions from the avails of the sale of defendant's property, Morgan & Wright, execution creditors, appeal. Affirmed.

On the 24th of June, 1898, Morgan & Wright, a foreign corporation, recovered a judgment in the county of Erie against the Globe Cycle Works, the defendant in this action, for $3,343.47, damages and costs. On the same day an execution was issued to the sheriff of that county on said judgment, and a levy was made at once on the stock, tools, chattels, machinery, and fixtures in the

manufacturing plant and store occupied by the said defendant in the city of Buffalo. On the same day eight other executions on judgments that day recovered and docketed against the defendant were also delivered to the sheriff, and like levies were at once made by him in pursuance of the said several executions. On the 1st day of July, 1898, said execution creditors united in the following direction to the sheriff, which was signed by their respective attorneys:

"To the Sheriff of Erie County: You are hereby directed to release your levy under the executions issued to you by the undersigned upon all property of the Globe Cycle Works except machinery and fixtures. You are to retain your levy under said executions upon the machinery and fixtures only, for the present, but the Globe Cycle Works are not to be interfered with in the possession of the premises for the use of the machinery and fixtures.

"Dated July 1st, 1898."

A week later they joined in another direction to the sheriff, also over the signatures of these attorneys, as follows:

"To the Sheriff of Erie County: You are hereby directed to withdraw your deputies from the premises occupied by the Globe Cycle Works at No. 108 Broadway, and also from the Main street store. You are, however, to retain your levy upon the machinery and fixtures of the Globe Cycle Works, but you are hereby relieved from all responsibility for the safe-keeping of said machinery and fixtures, and this shall be your authority in the premises.

"Dated July 8th, 1898."

In pursuance of these directions, the sheriff withdrew his deputies who were in charge of the property levied upon. The sheriff's fees on these executions, amounting to $260, were paid by the attorneys for the defendant. The cycle company continued to run its manufactory and its store, selling its goods as they were manufactured, until its personal effects were nearly all disposed of; and the entire property, including the plant and manufactory, only brought, on the public sale, $4,000, although it is claimed at the time of the levy the plant alone was worth $60,000. On the 4th day of May, 1899, the plaintiff recovered two judgments against the defendant, aggregating $2,089.77, which were on that day docketed in Erie county. On the same day an execution was delivered to the sheriff of that county on each of the said judgments, and upon the following day the sheriff levied upon the stock, wheels, tools, machinery, etc., of the defendant, and later in that month additional levies were made by virtue of these executions. The sheriff took possession of this property under these executions and sold the same at public sale on the 14th of June, 1899, for $4,000, although it does not appear that this was done under any special execution. The sheriff took possession of the fund, declining to pay until the rights of the execution creditors had been adjusted. A judgment was recovered July 2, 1899, by Edward P. Beals and others, for $110.80, and the execution was issued on the same day, and a levy made. There was no interference with the sheriff in his execution of this process by the judgment creditors or their attorneys. Morgan & Wright alone appeal. Other facts appear in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and McLAUGHLIN, JJ.

C. A. Dolson, for appellant.
Merton S. Gibbs, for respondent Excelsior Needle Co.
August Becker, for respondents Beals and others.

SPRING, J. A motion was made by the plaintiff in this action, after the public auction, to compel the sheriff to pay the plaintiff's executions from the avails of the sale. Notice of this motion was served upon the nine judgment creditors under whose directions the sheriff had relinquished the possession of the property to the de-

fendant, and some of these judgment creditors appeared, asserting their right to the proceeds of the auction sale. There is very little contradiction in the affidavits. The interference which it is alleged destroyed the lien of their levy is based upon the two directions to the sheriff, quoted above, supplemented as they were by the surrender of possession and apparent ownership to the defendant, and the withdrawal of the sheriff's force who were in custody of the property. The very obvious purpose was to permit the defendant to continue unmolested its manufacturing industry. While this was based upon the promise of the attorney for the defendant to pay these judgments, and the statement that he had sufficient money to make this payment, they afforded no justification for directing the sheriff, in effect, to release his levy, unless they were willing to trust to the ability of the defendant to meet its obligations, or upon the promise of its attorney to pay them. The fact that their purpose was praiseworthy does not lessen its effect. The law is quite clear that the object of the execution is to enforce the judgment debt, and not to convert it into a security upon the property, and still allow the judgment debtor to prosecute his business regardless of the lien of the execution. As was said in Freem. Ex'ns, § 206:

"In other words, it is not the mere issuing or delivery of the writ which creates a lien, but an issuing and delivery for the purpose of execution. The execution of a writ for the purpose of making or keeping it effective as a lien cannot stop with a mere levy upon the property. If the officer is instructed by the plaintiff not to sell till further orders, the lien of the execution and levy becomes subordinate to that of any subsequent writ placed in the officers' hands for service."

In Storm v. Woods, 11 Johns. 110, the property, after the levy by execution, was allowed to remain in the hands of the judgment debtor for nearly a year, with the acquiescence of the owners of the judgment. The debtor used the property in all respects as before the levy, and this unrestricted dominion over it continued until a levy was made by virtue of the second execution. There was no suggestion of intentional fraud in the conduct of the owners of the judgment. They were actuated by the laudable object of giving the debtor time to meet the judgment, and believed there was no interruption in the lien of their levy. The court, however, held their execution had become dormant by this remissness on their part, and the second execution was the prior lien.

In Sage v. Woodin, 66 N. Y. 578, the plaintiff had obtained a judgment by default against one Case. Execution was issued, and a levy made December 24, 1866. In January following, the plaintiff's attorney, at the request of the attorney for Case, opened the default, permitted an answer to be served, and, in accordance with the stipulation of the parties, "directed the sheriff to suspend all further action or proceedings upon the execution until otherwise ordered." The plaintiff, a year later, obtained judgment in the action, and the sheriff was directed to collect the execution on the original judgment. During the pendency of the action, after the opening of the default, the judgment debtors had handled the property—which comprised a stock of goods—as if they were the absolute owners. The court

held this intervention of the execution creditor destroyed the life of the execution, saying, at page 584:

"The plaintiff put himself in a position where he could not enforce the writ for an indefinite period; and whether it could ever be enforced was uncertain, depending on the contingency of his obtaining a second judgment in his favor. Meanwhile the firm was allowed to go on selling the goods levied on, and dealing with the public and each other as if no execution had been issued. To hold, under these circumstances, that the execution remained in life so as to defeat the title of an intermediate bona fide purchaser of the property, would operate as a fraud. It is not necessary that the execution creditor should have acted in bad faith, or with an intention to defraud, in delaying an execution of the writ to make it dormant as to third persons. An unreasonable delay, directed by the plaintiff in the execution, although from motives of humanity, will let and give precedence to a subsequent execution."

Smith v. Erwin, 77 N. Y. 466; Everingham v. Bank, 124 Ill. 527, 17 N. E. 26; Benjamin v. Smith, 12 Wend. 404; and Kimball v. Munger, 2 Hill, 364,—are all along the same line. The law, therefore, seems to be settled that any direction by the execution creditor to the sheriff which suspends the lien or delays the enforcement of the levy renders the execution dormant against subsequent creditors or bona fide purchasers. However veiled may be the direction, however much it may be founded on a humane desire to protect the debtor, if it is tantamount to a mandate or instruction to the sheriff to withhold the execution of his process, during the interim that he accedes to this demand the levy ceases to be effective. That doctrine rests on public policy, and is necessary to prevent fraud, and it should receive a fairly rigorous enforcement. At the time of the direction to the sheriff the personal property under levy comprised the various parts of a large number of bicycles in process of manufacture, which it was believed, if manufactured, would be adequate to meet all unsecured claims against said defendant. The purpose of this direction was to release the levy upon all the property of the defendant except the machinery and fixtures. The expectation probably was that the defendant could work up these uncompleted wheels, and possibly pay its debts. The direction, in order to consummate its object, inhibited the sheriff from interfering with the defendant in its "possession of their premises for the use of the machinery and fixtures." The occupation of the real estate by the defendant was undisturbed, and the only construction that can be given to this ingenious phraseology is that the defendant was to have the exclusive use and control of the machinery and fixtures, and the levies were to be suspended until the execution creditors saw fit to revive them. Not satisfied with this intervention, these creditors a week later united in a further direction to the sheriff requiring him to withdraw his deputies, and relieving him from any responsibility for the safe-keeping of the machinery and fixtures, still seeking, however, to cure this unrestricted committal of the property to the custody of the judgment debtor by cautioning the sheriff to retain his levy upon the machinery and fixtures. The sheriff is the public official whose peculiar duty it is to dispose of property by execution, and whose levy thereunder results in the absorption of the property levied upon by the judgment creditor. In this instance this official

was expected to keep alive the liens created by his levy, but was to be relieved unqualifiedly of the custody of the property, while the judgment debtor was reinstated in its possession and ownership as unequivocally as if no levy had been made. These attorneys apparently had in mind the danger to their clients of an interruption to the sheriff at their direction, and sought to hedge against that by requiring him to retain the levy on the machinery and fixtures. The vice in their position, in view of what followed, is that the retention of the levy by the sheriff was perfunctory and nominal, and was so designed to be. They wished the defendant to be secure and undisturbed in its use and control of all the property, and still keep their grip on it, if occasion required the restoration of their liens. The law does not tolerate such interference with the sheriff in the performance of his duty. It was left to the defendant not alone to manufacture these wheels, but to sell, and apply the proceeds of the sales to whatever it saw fit, and the machinery and fixtures were necessary to the defendant to accomplish this purpose. The project was carried out so that a practical interpretation was given to these two directions to the sheriff. The cycle company managed its business without let or hindrance from the sheriff or the execution creditors for 10 months, and apparently it was only after the levies made in pursuance of the plaintiff's judgments that they began to infuse life into these dormant executions. They were too late, as the plaintiff had obtained levies which were prior in effect to those rendered inoperative by these directions.

It is contended on behalf of the appellant that there was no objection on the part of the respondents to selling the property in bulk, and, even if there had been a release of the levy on the stock by the action of the judgment creditors, it would not be available to these subsequent lienors. This position would be tenable except that the conclusion is inevitable that the levies became dormant as to the machinery and fixtures. While, in terms, the levy was to continue upon this class of the property, in reality the effect of the instruction was to transfer, not simply the passive control of the property to the judgment debtor, but also the right to its use as owner, without restriction. The sheriff's possession was a mere fiction, and the authority of the cycle company was absolute. If the sale was had in pursuance of the nine executions, it is evident that Morgan & Wright regarded the loose property as much subject to their liens as the machinery and fixtures; for, although represented at the sale, there was no instruction to the sheriff to sever the property, or any claim made that its lien related solely to the machinery and fixtures. This may be a circumstance indicating its attorney supposed its levy covered the entire property owned by the defendant. The owners of the Beals judgment apparently did nothing to release their levy, so their lien has remained intact.

The order is affirmed, with $10 costs and disbursements to each respondent. All concur.