## McLaughlin *versus* McLaughlin.

85 317
193 174

1. A writ of execution is entirely within the control of the plaintiff therein, and he may go on or stay it at will, provided he does not affect the rights of third parties.

·2. Where the writ has been levied on land as between the plaintiff therein and the defendant particular equities might be raised by particular circumstances, but as against judgment creditors and other outside parties, the plaintiff has the right, after levy, to delay proceedings to secure condemnation, so long as may suit his reasonable convenience.

October 22d 1877. Before MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. AGNEW, C. J., and SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Armstrong county :* Of October and November Term 1877, No. 162.

Ejectment by Thomas McLaughlin against Mary McLaughlin, for twenty-two acres of land. Both parties claimed the land in controversy, under conflicting sheriffs' sales made of it as the property of William McLaughlin. William McLaughlin was the husband of defendant, and on the 3d of April 1861 owned the land in dispute. On that day a judgment was entered against him in favor of J. E. Willis, to March Term 1861, No. 102. Upon this judgment a fi. fa. issued to June Term 1861, No. 78. Under this writ the sheriff levied (no date given) on said land, but afterwards endorsed, thereon " This writ stayed by order of plaintiff's attorney." On the 30th of January 1862, in pursuance of a præcipe from the plaintiff's attorney, a certified copy of this fi. fa. was issued and placed in the sheriff's hands. Upon this copy of fi. fa. an inquisition was held, and the property condemned, which proceedings were duly approved by the court on their return thereto. A writ of vend. ex. then issued, and the property was sold to Willis, the plaintiff in the execution. At the time of said sale, William McLaughlin, the defendant in the execution, was in possession of the land, and by a written lease became thereafter the tenant of Willis, and so continued until his death, in 1864. After his death, his wife, Mary, the defendant, continued to reside on the land, as the tenant of Willis, until 1869, when, with her own means, she purchased the same, and received from Willis a 'deed therefor.

On the 21st of March 1861, a judgment was entered against William McLaughlin, in favor of John Hildinger, for use of Thomas McLaughlin, to March Term 1861, No. 170. Upon this judgment a scire facias to revive was issued to September 1863, upon which judgment was entered on September 19th 1863. On this a fi. fa. issued, and the sheriff levied on the interest of said William McLaughlin, in the land in dispute. An inquisition was held, and the property condemned, and after approval of these by the court a vend. ex. issued, and the property was sold to Thomas McLaughlin, who brought this action.

At the trial, the defendant made three offers which, in substance,

[McLaughlin *v.* McLaughlin.]

were as follows : 1. To show judgment against William McLaughlin ; sheriff's sale afterward to Willis ; sale by Willis to defendant ; continued possession by her from time of purchase, and that she paid for land with her own money. 2. The fi. fa. and levy thereunder upon the land in dispute ; its inquisition and condemnation, and the approval of the court; the vend. ex. thereon, to be followed by proof that at the time of the sheriff's sale, under which plaintiff claims, public notice was given of the title to said land being in Willis, to show that at time of said sheriff's sale to plaintiff William McLaughlin had no title to said land. 3. To show by witness that subsequent to the sale to Willis, William McLaughlin surrendered his possession and became the tenant of Willis, and that he was such prior to the sale to plaintiff; to show that said William McLaughlin acquiesced and ratified said sale to Willis, and to estop those claiming under him from disputing the validity of said sale to Willis. All these offers the court rejected, and they constituted respectively, the first, second and fifth assignments of error.

The defendant submitted the following points, to which are appended the answers of the court :—

1. That the return of the sheriff on fi. fa. No. 78, June Term 1861, stayed by order of the plaintiff's attorney, neither vitiates nor destroys the levy endorsed thereon, but is merely a suspension for the time being of the execution of the process which may be resumed or renewed at the next or any subsequent term.

" Refused."

2. That the issuing of a copy of the fi. fa. is a resumption of process of execution at and from the point at which they were suspended, and being a mere continuance, the two papers are to be considered as one, and, if in form, the proceedings thereon are valid.

" Refused."

3. That the inquisition and condemnation made or held on that copy of fi. fa. are equivalent to the holding on the original writ after its return-day, and no objection being made to its approval by the defendant in execution, no person claiming under him can now object.

" Refused ; for the writ being stayed the copy is of no validity."

4. That the approval of the inquisition and the issuing of a vend. ex. by the court, and the acknowledgment of the sheriff's deed, cures all defects in the execution or its process that could have been corrected by the court before the acknowledgment of the deed, and, if there was any in the writ upon which the sale to J. E. Willis was made, it was an irregularity and was cured by the acknowledgment of the deed.

" Refused."

5. That the sheriff's deed, under which the defendant claims title, being the elder of the two, divests the title of William M'Laughlin in the land, and the plaintiff to this suit derived no title by virtue of his sheriff's deed to the land in controversy.

[McLaughlin v. McLaughlin.]

Ans. " As a general rule this is the law ; but we think the sale to Willis was without authority of law, and thus explained the point is negatived.

The court, McDermitt, P. J., after recapitulating the facts in evidence, in the charge to the jury, inter alia, said :—

" No authority has been cited, nor is any known to the court, as to whether a fi. fa. stayed by the plaintiff after levy, but before inquisition and condemnation can be the legal basis of a vend. ex., so that the sale thereon will vest title in the purchaser.

" The copy of the fi. fa., filed as before mentioned, affects the merits of the case in no conceivable way ; for a copy of the writ is as lifeless as the writ itself.

" A sheriff, in selling real estate, acts under a naked statutory power, and he who purchases under a power takes no title unless the power exists : Shields v. Miltenberger, 2 Harris 76 ; St. Bartholomew's Church v. Wood, 11 P. F. Smith 96 ; Caldwell v. Walters, 6 Harris 79. The acknowledgment of a sheriff's deed cures mere irregularities and non-essentials in the sale process, but not the want of authority in the sheriff: Shields v. Miltenberger, *supra.*

" Where a levy is set aside by the court, and a vend. ex. is issued without a fresh levy, a sale vests no title in the purchaser : Burd v. Dunsdale, 2 Binn. 80. The control of the plaintiff over his writ is the same, whether real or personal property is levied on. In Dorrance v. Commonwealth, 1 Harris 160, where personal property was the subject of the levy, the court says, ' It would hardly be contended that the plaintiff, or his attorney, has no control over the writ even after the return-day. He may, if he chooses, release the debt or waive the levy, either by a written or verbal order, and the sheriff would be bound to obey him.' In Shryock v. Jones, 10 Harris 303, where the levy was on realty, the court says : ' Process is under the control of the party issuing it until the rights of others become vested. The plaintiff or his attorney may stay the writ at any moment before the sale, provided his dominion over it be so exercised * * * as not to mislead the purchaser * * * but whether it shall go on, or be stayed, is a matter over which the plaintiff has, while it is in fieri, absolute authority.'

" A fi. fa. relied on as the basis of a vend. ex. is in fieri until the sale is consummated by the latter. When lands have been extended the defendant has vested rights of which the plaintiff cannot divest him by staying the writ : Miller v. Milford, 2 S. & R. 35.

" When the sheriff has not time between the levy and the return day to hold an inquisition, and the writ has not been stayed, it may be held after the return day : Weaver v. Lawrence, 1 Dal. 405. When the writ has been stayed by the court, or by the plaintiff, when he has the power to do it, inquisition cannot be had on it ; for it is then as though never issued. True, a vend. ex. is in

[McLaughlin *v.* McLaughlin.]

contemplation of law issued by command of the court, but there are some things a court cannot command a sheriff to do ; and among them is to sell real estate on a vend. ex. without a preceding and still living fi. fa. for its basis. Levy, inquisition and condemnation are but the incidents of a fi. fa., and when it is stayed, so are they. The stream lives no longer than its fountain. A vend. ex. is the fruit of a living, not of a dead fi. fa. A stayed fi. fa. is dead.

" You are instructed, 1. [That the sheriff's deed to Willis, under whom the defendant claims, vested no title in him.] 2. That if the evidence reasonably satisfies you that the sheriff's deed to Thomas McLaughlin was for the land in controversy, then your verdict must be for the plaintiff. If it does not so satisfy you, then it must be for the defendant."

The verdict was for the plaintiff, and the defendant took this writ, and among the errors assigned were those heretofore noted, and twelfth, to the portion of the charge in brackets.

*John Gilpin* and *John V. Painter*, for plaintiff in error.—What was the effect of the order to stay ? The court below held that it was annihilation, and destroyed not only all future action upon the writ, but also everything that had been previously done under it. Was this ruling correct ?

A writ stayed for a definite period is but suspended during that period, and we submit that a stay for an indefinite period is but a suspension until the plaintiff in execution gives notice to the sheriff to proceed : Deacon *v.* Govett, 4 Phila. 7. Or at most, it merely stays the further execution of the writ. The arrival of the return day before the sheriff has fully executed a fi. fa., may prevent him making a further levy thereunder, but surely a levy which he had previously made is not thereby annulled.

In regard to the practice in Armstrong county where writs have been stayed by order of attorney, reference was made to Blythe *v.* Richard, 10 S. & R. 262; Kostenbader *v.* Peters, 30 P. F. Smith 430; Cochran *v.* Cummings, 4 Yeates 136.

*Golden & Patton*, for defendant in error.—The only practice in existence in Armstrong county is what we believe to be the general practice in the Commonwealth; when the sheriff has levied upon real estate by fi. fa. and returns inquisition not held for want of time, or where he has actually held inquisition which has been subsequently set aside by the court, in either case he may take out copy of fi. fa., and after giving due notice, hold an inquisition. But where the writ has been stayed after levy and before inquisition, and so returned to the office and docketed, that writ is ended, and if the plaintiff desires proceeding further upon his judgment, he may, upon motion to the court strike off the levy and proceed *de novo* or issue an alias fi. fa. with copy of levy.

The indefinite staying of this writ was an end of it, and its lien as a fi. fa. was gone with its life. And had the levy been on personal property it would not be contended that the sheriff might take out a copy of the writ after it had slept in the office for a period of six months, and sell the personal property. What is the difference then between a levy upon real estate and one of personal property? If the writ is dead to the latter by its stay and return, is there any legal or logical magic to save it in the former?

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

In the trial of this cause in the court below, the parties asserted their respective titles to the land in controversy under conflicting sheriffs' sales made of it as the property of William McLaughlin. The first sale was by virtue of process issued in a judgment entered on the 3d of April 1861, in favor of J. E. Willis. A fieri facias went into the sheriff's hands on the 5th of April 1861, under which a levy on this land was made, and on which it was endorsed. Subsequently the writ was stayed by the order of the attorney for the plaintiff, and was returned to the office files. On the 30th of January 1862, in pursuance of the præcipe of the attorney, a certified copy of the writ was made out and delivered to the sheriff, who held an inquisition on the 28th of February, when the property was condemned. The inquisition was approved by the court on the 5th of March. A venditioni exponas was issued on the 14th of July; the land was sold to J. E. Willis, the plaintiff in the judgment, on the 30th of August; and the sheriff's deed was acknowledged in open court on the 3d of September 1862. Throughout these proceedings William McLaughlin, the defendant in the judgment, was in possession of the property, and immediately after the execution of the sheriff's deed entered into a written lease with Willis, and became his tenant. He was drafted into the army in 1864, and was killed in the early part of 1865. His widow, the defendant below, remained in possession as Willis's tenant until the 10th of September 1869, when she purchased and received a conveyance of the land.

An earlier judgment than that of Willis's was a lien against William McLaughlin. It was entered on the 21st of March 1861, in favor of John Hildinger, as plaintiff, and the same land was levied on and condemned under a fieri facias to December Term 1863, and sold under a writ of venditioni exponas to Thomas McLaughlin, the plaintiff below, on the 30th of January 1864.

Numerous exceptions were taken in the course of the trial, and twelve errors have been assigned to the rulings of the court on questions of evidence, to the answers to the points presented, and to the instructions given to the jury. Everything contained in them, however, that is essential in the present inquiry, is covered by the

first, second and fifth errors assigned to the final rejection of the defendant's first two offers of evidence, and the offer specified in the fifth error, which, in the first instance, had been admitted, and by the twelfth error, complaining of the peremptory direction in the concluding portion of the charge, that "the sheriff's deed to Willis, under whom the defendant claims, vested no title in him." The reason for the direction had been previously stated by the judge to be, that when a writ of fieri facias "has been stayed by order of the court, or by the plaintiff, when he has the power to do it, inquisition and condemnation cannot be had on it, for it is then as though never issued."

In some of the northern counties of the Commonwealth, according to the recollection of two members of this court, the practice of placing writs on which real estate levies had been endorsed, and which had been stayed by plaintiffs or their attorneys, in the sheriff's hands for purposes of inquisition and condemnation, has been long pursued. Writs have been sometimes stayed in pursuance of agreements between the parties, sometimes to serve the convenience of sheriffs, sometimes for want of time, and sometimes on account of the absence or engagements of attorneys. Would a writ thus stayed become a simple nullity? Or would the levy only be annulled, and an alias fieri facias be the only process open to the plaintiff? What, then, would be the fate of the levy? How could it be eliminated from the face of the record? The fact of its existence would be just as absolute as the fact of the existence of the fieri facias itself. A fresh writ against chattels could not go out, for the levy would intervene between the judgment and such a writ. A venditioni exponas could not go out, for an inquisition would not have been held on the land. In Shryock *v.* Jones, 10 Harris 303, it was held that "process is under the control of the party issuing it until the rights of others become vested. The plaintiff or his attorney may stay the writ at any moment before the sale, provided his dominion over it be so exercised as not to mislead the purchaser, but whether it shall go on or be stayed, is a matter over which the plaintiff, while it is in fieri, has absolute authority. Even a stay of proceedings on a writ levied on personal property, does not involve the loss of the lien, and does not affect the plaintiff's right as against the defendant or the goods, although it exposes him to the risk of having his execution postponed: 1 Tr. & H. 831. A stay by the order of a plaintiff of a venditioni exponas of goods, where there is no collusion shown between him and the defendant, and where the property was left in the defendant's possession, was used by him as before the levy, and either consumed or disposed of by himself or sold under subsequent judgments and executions, will not operate to postpone in favor of junior judgments the lien of the plaintiff's judgment on the real estate of the defendant: Morrison *v.* Hoffman, 1 Barr 13; Camp-

[McLaughlin *v.* McLaughlin.]

bell's Appeal, 8 Casey 88. So, the plaintiff may withdraw his writ without necessarily discharging his lien on the real estate as respects other judgment creditors: Cathcart's Appeal, 1 Harris 416. The case is still stronger in favor of a plaintiff whose writ has been levied on land. As between him and the defendant, particular equities might be raised by particular circumstances, but as against judgment creditors and other outside parties, he has the right after levy to delay proceedings to secure condemnation so long as may suit his own reasonable convenience. And this right seems to have been recognised throughout the history of the state. In Weaver *v.* Lawrence, 1 Dall. 380, decided in 1788, it was held where an inquisition on lands under a fi. fa. had been quashed for irregularity, the sheriff might proceed to hold a new inquest after the return of the fi. fa., without a new writ. Usually, the original execution has been withdrawn from the files, but it may well be that the more methodical and safer practice in all cases would be that which was pursued here of delivering a certified copy into the sheriff's hands.

Not only were the proceedings on the Willis judgment not objected to by William McLaughlin, but after the sale was made, he became the tenant of the purchaser. He acquiescing in the validity of the process by which his title was divested, no other person, in the absence of proof of collusion or fraudulent practice, could make that process the subject of debate. At the utmost, the condemnation by the sheriff's inquest, under the authority of the certified copy of the original writ, was an irregularity, and of that the defendant in the judgment could alone complain. In Crawford *v.* Boyer, 2 Harris 380, it was held that only the defendant, and he within a reasonable time, might object to the want of a confirmation of an inquisition as required by the Act of 1836. And the consent of the defendant will validate a sheriff's sale of improved land without inquisition, although without such consent the sale would be void: Wray *v.* Miller, 8 Harris 111. A sheriff's sale of a defendant's real estate upon a judgment and execution against him, without a condemnation or waiver of inquisition in that particular case, and a deed acknowledged to the purchaser without objection, and the proceeds of sale appropriated to the defendant's debts, will divest the title of the defendant to the premises, and a subsequent sheriff's sale of the premises as the property of the defendant will confer no title on the purchaser. A defendant must object in a reasonable time, and such reasonable time is before the confirmation of the sale and the acknowledgment of the deed: Spragg *v.* Shriver, 1 Casey 282.

Where the essential requisites of a judicial proceeding are shown to have been complied with, the law will not annul it for failure of directory formalities. A levy and sale by a sheriff on an execution issued upon a judgment against a testator's executors, without naming them, vests a good title in the purchaser: Jones *v.*

Gardner, 4 Watts 416. In Speer *v.* Sample, Id. 367, an execution issued on a judgment after the death of the defendant, was held not void, but only voidable, and a sale on the execution was held to vest in the purchaser a good title. Here the inquisition was expressly approved by the court on the 5th of March 1862, five days after it was taken, and on the 3d of September 1862 the deed was duly acknowledged. The effect of this action has been settled by a long line of cases. " The Act of 1806, as well as the subsequent statutes, made it the duty of the sheriff to give notice of an inquisition to be held on real estate which he seized in execution. But the omission to give notice was an irregularity for which the sale might have been set aside. It never was a reason for declaring the purchaser's title void after deed made and payment of purchase-money" : BLACK, C. J., in Meanor *v.* Hamilton, 3 Casey 137. The provisions of the Act of. Assembly in relation to the acknowledgments of sheriff's deeds are directory, and after a deed has been acknowledged and delivered to the purchaser, it is to be presumed that they have been complied with : Stroble *v.* Smith, 8 Watts 280. It is true that the acknowledgment by a sheriff of a deed executed by him is not such *res adjudicata* as precludes an inquiry into the legality of the proceedings : Braddee *v.* Brownfield, 2 W. & S. 271. And the absence of authority, or the presence of fraud, utterly frustrates the operation of a sheriff's sale as a means of transmission of title, and may be insisted on after the acknowledgment : Shields *v.* Miltenberger, 2 Harris 76. But it is sufficient to raise the presumption, in the first instance, that the statutory requisites for notice to parties have been complied with, and this presumption must prevail until it is rebutted by satisfactory countervailing proof : St. Bartholomew's Church *v.* Wood, 30 P. F. Smith 219. It cures all defects of the process or its execution, which the court has power to act upon : Thompson *v.* Philips, 1 Bald. 246. And it cures mere irregularities of every kind : Blair *v.* Greenway, 1 Brown 219. The stay of the fieri facias of Willis was a mere suspension of the proceedings against William McLaughlin's land. But if it had been more than that—if strict rules of practice had required an application to strike off the levy, and for leave to issue a fresh writ—the confirmation of the inquisition by the court, the award of the venditioni exponas, and the acknowledgment of the sheriff's deed, would have clothed the process with thoroughly effective vitality, and have cured all irregularities and defects of form. The evidence specified in the first and second assignments of error, and the testimony specified in the fifth assignment, should have been submitted to the jury. The cause must go back for a fresh trial. It may possibly present other features than those now disclosed. If it do not, however, it is not seen how the defendant's right to a verdict can be made a debatable question.

Judgment is reversed, and *venire facias de novo* awarded.