## In re ZEIS.

## In re McCARTHY BROS. & FORD.

(Circuit Court of Appeals, Second Circuit. April 24, 1917. On Rehearing, July 10, 1917.)

### No. 187.

1. EXECUTION &113—DORMANT LEVY—REVIVAL.

Where an execution becomes dormant after levy, by reason of instructions to the officer not to sell, it loses its priority of lien as against later levies or other liens acquired during the period of dormancy; but its lien is not extinguished as against the defendant, and on directions to proceed with the sale its right to priority is revived as against any subsequently acquired liens.

2. BANKRUPTCY &196—LIENS—DORMANT LEVY OF EXECUTION.

A trustee occupies the position of a creditor with an execution issued and levied on the date of the filing of the petition in bankruptcy, but at no earlier date; and where an execution levied more than four months prior to such date had been allowed to become dormant by successive postponements of the sale with the consent of the plaintiff, but had been revived by orders to sell on a fixed date, the lien of the levy was effective against subsequent proceedings in bankruptcy against the defendant.

Appeal from the District Court of the United States for the Western District of New York.

In the matter of George J. Zeis, bankrupt. From the judgment of the District Court, McCarthy Bros. & Ford appeal. Reversed.

For opinion below, see 229 Fed. 472.

August Becker and J. Ralph Ulsh, both of Buffalo, N. Y., for appellants.

Arthur J. Adler, of Buffalo, N. Y., for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. This is an appeal under section 25a (3) of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553 [Comp. St. 1916, § 9609]), taken March 6, 1916, from a judgment of the District Court rendered February 8, 1916, refusing to give the appellants priority over the trustee in respect to execution issued upon the judgment recovered by them against the bankrupt more than four months before the petition was filed. Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725. The court found that the appellants had allowed the execution issued on their judgment to become dormant.

The court below was without jurisdiction:

First. Because the appeal was not taken within ten days after the judgment was rendered as required by the act. In re Martin, 201 Fed. 31, 33, 119 C. C. A. 363; Conboy v. Bank, 203 U. S. 141, 27 Sup. Ct. 50, 51 L. Ed. 128.

Second. Because a claim of priority, the debt not being disputed, is not "a debt or claim" within the section. The judgment of the court

neither allowed nor disallowed any sum, but only denied priority. Holden v. Stratton, 191 U. S. 115, 24 Sup. Ct. 45, 48 L. Ed. 116.

The appeal is dismissed.

### On Rehearing.

ROGERS, Circuit Judge. When this case was here before, this court dismissed the appeal on the ground that the court was without jurisdiction; the appeal not having been taken in time. A rehearing was asked and granted, and upon reargument we are satisfied that the appeal was taken in time. The confusion arose from the fact that the caption of the judgment bears date of February 8, 1916, which is the date on which the District Judge handed down his opinion; whereas, the fact is that the judgment was not prepared and entered in the clerk's office until March 3, 1916, and the appeal was taken and allowed within three days after the entry of the judgment.

This brings us to a consideration of the case upon the merits. The appellant recovered a judgment on October 22, 1912, against the bankrupt, for the sum of $726.95, and on that day an execution was issued upon the judgment, and the sheriff on the same day duly levied on certain personal property. The petition in bankruptcy was filed on March 12, 1913. The sheriff was restrained from selling under appellant's execution by a temporary restraining order served on March 12, 1913, and made permanent on March 18, 1913. There were various other creditors, who obtained executions against the personal property subsequent to that of the appellant and prior to the bankruptcy; but they also consented to the postponement of the sale under their executions, and they stand in a like position as the appellant in respect thereto, and there is no controversy as between them and the appellant as to whether they obtained priority by virtue of the appellant's consent not to proceed.

The property covered by the levy was thereafter sold by the bankruptcy court and the proceeds stand in place of the property itself. It appears that at the time that execution of the appellant was issued and levied the sheriff held two prior unsatisfied executions against the bankrupt, under which levy had been made. The property had been advertised for sale by the sheriff pursuant to the levy, but the sale had been adjourned from time to time until October 28, 1912. Thereafter there were further adjournments of the sale, and on December 13th the two prior executions were satisfied; the execution of the appellant on that day becoming the first lien. After this date there were adjournments of from three days to two weeks, 11 in number, until on March 6, 1913, the sale was set for March 13th, and on March 12th this sale was enjoined. There were in the sheriff's hands also a number of executions subsequent to the appellant's, and all of the execution creditors acquiesced in the adjournments.

[1] Upon objections filed by the trustee in bankruptcy to the appellant's claim to the proceeds of the property by virtue of its execution, the referee in bankruptcy held that the appellant's execution had become dormant when bankruptcy intervened and was not a lien on

the property levied upon. The District Judge affirmed the order of the referee and disallowed the appellant's claim. At the time this execution was taken out two prior executions had been levied on the bankrupt's property, which had not been satisfied; and the sheriff had failed to proceed under any of them. The reason why he did this was given by him on the stand as follows:

"I do not mean to give the impression here that the day before the sale Mr. Becker [plaintiff's lawyer] called up and said: 'Mr. Bernhard, will you please adjourn that sale until to-morrow?' I used to call you, I think. It was a fact that money had been paid on the first executions, and that they had been paid. I was having conferences with Mr. Zeis up to that time, and he was making promises to me to pay the money. He was telling me of deals that would bring him money, and, if I would hold the sale a week or so, he would have the money; and he would say: 'If you will adjourn the sale, I can get the money within a few days.' After such promises were made, I would communicate the circumstances to you or Mr. Becker, and tell of the adjournment that had been had, and the money that had been paid. I would tell everybody what Mr. Zeis told me, that he paid so much money and it looked as though he was going to pay the balance, and upon that theory the execution creditors consented to the adjournment. I suppose you refused to adjourn that sale more than any other execution creditor."

He also testified:

"But Mr. Becker did not come to me in the first instance and ask me to hold this sale. Mr. Becker, of his own initiative, never came to me and said, 'Mr. Bernhard, don't sell Mr. Zeis' property;' but he consented to adjournment, asked me what I thought about getting the money."

He stated that all the adjournments were made "from time to time in hopes that Mr. Zeis could realize from the sale of some real estate and purchase all these judgments." It appears that the various adjournments were made with the consent of the execution creditors, and on representations made to them by the sheriff that Zeis wanted and expected to pay, and that payment would be made out of a sale of certain of his real estate, and that unless the sale under the executions was postponed Zeis would be thrown into bankruptcy.

It is conceded that under St. 13 Eliz. c. 5, and like statutes, executions taken out with the intent to hinder, delay, or defraud creditors or others are, as against the persons sought to be hindered, delayed, or defrauded, utterly void. It may also be conceded that, when the object of the writ is simply to obtain better security for the debt, the writ is fraudulent as against subsequent purchasers or incumbrancers, and that it would be outranked by subsequent executions. If, after a levy is made, the officer is instructed not to sell, the execution becomes dormant, and during the period it remains dormant the plaintiff is liable to lose the benefit of his writ through the sale or incumbrance of the defendant's property. But the lien is not vitiated as against every one by the instruction not to sell. The correct rule is laid down in Freeman on Executions, § 206, as follows:

"Liens of executions may be lost as against junior judgment creditors, mortgagees, or vendees acquiring rights during the time execution may be stayed by order of the plaintiffs. But as against the defendants in execution, or his personal representative or heirs, or others not acquiring rights or liens, the mere suspension of the execution has no effect on its lien."

So in 11 Am. & Eng. Encyc. of Law, p. 694, the law is stated as follows:

"It is a well-settled principle of law that the office of an execution is merely to enforce payment of a debt, and consequently an attempt to make use of it for purposes of security merely, or to shield the property of the debtor from seizure by other creditors, is a perversion of the writ, and will postpone it to other executions subsequently issued. Hence, if a plaintiff delivers an execution to the sheriff with a direction not to levy at all, or until further orders, or to levy and hold without sale, it creates no lien on defendant's property as against a creditor issuing and proceeding with a subsequent execution; and the same is true if similar orders be given after delivery or after levy, or if such be the intent of the creditor though no express orders to that effect be given."

If it be assumed that the appellant's levy became dormant because of the failure to proceed promptly thereunder, it is nevertheless true that it was, as against the defendant in execution, good during the whole period from October 22, 1912, the time when it was made to the time of the adjudication in bankruptcy. It was also good during that whole period as against the execution creditors who levied subsequently to the levy of the appellant, and who acquiesced and consented to the various postponements of the execution sale, and did nothing other than the appellant did as respects the enforcement of their levy.

Still, assuming it to have become dormant, it was revived by the directions given to the sheriff to proceed with the sale, given six days prior to the filing of the petition in bankruptcy; and it was the direction to proceed with the sale that led to the filing of that petition. The various postponements of sale which the execution creditors had been consenting to from time to time had been given, as I have already noted, in the hope that bankruptcy proceedings might be avoided. The appellant, however, could no longer be induced to consent to further delay, and the bankruptcy proceedings were instituted. The effect of the instructions of the appellant to the sheriff to proceed with the sale is stated in Freeman on Executions, vol. 2, § 206, p. 1043, as follows:

"If the plaintiff, after staying or suspending its execution, directed the officer to proceed, the lien will be revived and made paramount to all writs received by the officer after such direction to proceed."

[2] Unless, therefore, it can be said that the trustee acquired the rights or status of a bona fide purchaser or junior execution creditor during the time proceedings were suspended, the lien is good as against him, and must be recognized by the bankruptcy court. It is clear that a trustee in bankruptcy is not a bona fide purchaser. Zartman v. First National Bank, 216 U. S. 134, 138, 30 Sup. Ct. 368, 54 L. Ed. 418. And also it is settled that the trustee occupies the position of a creditor with an execution issued and levied upon the date of the filing of the petition in bankruptcy, and not earlier. Bailey v. Baker Ice Machine Co., 239 U. S. 269, 36 Sup. Ct. 50, 60 L. Ed. 275.

The revival arising from an instruction to proceed to sell was not the revival of the lien, but a revival of the priority of the lien. No new lien was created, which would be void because within the four-months period under section 67f of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 564 [Comp. St. 1916, § 9651]). When an execu-

tion is deemed to be dormant, it simply means that the lien has lost its priority in favor of another execution or person acquiring certain rights during the period of dormancy. The lien as such, which is the right to satisfy the debt out of the property levied upon, still remains. The property is still charged, with that lien while the execution of the writ is suspended; the only difference being that other executions, etc., may come in and fasten on the property and be satisfied first. If the property is sold under such circumstances, while the later executions may successfully claim to be satisfied ahead of the one which became dormant, the so-called dormant execution will be paid out of any surplus remaining after the satisfaction of the others. That is all that has ever been held to result from a dormancy, so-called. See Peck v. Tiffany, 2 N. Y. 451; Keel v. Larkin, 72 Ala. 493, 502, 503.

For the reasons stated, the decree and order of the District Court should be reversed; and it is so ordered, with costs of this appeal.

Decree reversed.