## In re SCHWAB PRINTING CO.

### FRANKEL v. J. W. BUTLER PAPER CO.

Nos. 4613–4671.

Circuit Court of Appeals, Seventh Circuit.

June 25, 1932.

George A. Shurtleff and Clarence W. Heyl, both of Peoria, Ill., for appellant.

Ira J. Covey and Edwin L. Covey, both of Peoria, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

Did appellee at time of bankruptcy have a lien on certain of bankrupt's personal property by virtue of its judgment against bankrupt, secured more than four months preceding bankruptcy, and the indicated proceedings thereunder?

Bankrupt was conducting a considerable printing establishment at Peoria, Ill. It owed appellee about $4,000, for which appellee obtained judgment in the Peoria county circuit court. The chronology of the proceedings is as follows:

December 16, 1927, judgment was rendered.

December 17 execution was delivered to the sheriff, who then indorsed upon the back thereof the time that he received it; December 22 demand upon the bankrupt under the execution was made, and indorsed on the execution.

March 13, 1928, the sheriff made a levy on an Optimus printing press and a Cleveland folding machine, both of definitely described model and number—part of bankrupt's equipment—and on same day he indorsed the levy upon his writ and appointed a custodian to take charge of the machines, which were not then removed, but continued to be used as before in bankrupt's business.

March 16 Dwight Bros. Paper Company obtained judgment in same court against bankrupt for about $5,000, and on April 21 execution on this judgment was delivered to the sheriff. May 23 levy by the sheriff under this writ was made on the personal property of bankrupt.

May 26 the sheriff advertised the sale of the press and folder under the Butler Company execution, setting the sale for June 5, 1928.

May 29 involuntary petition in bankruptcy was filed against bankrupt, and June 1, on petition of the receiver and the order of the referee in bankruptcy, the sheriff surrendered to the bankruptcy court possession of all the bankrupt's property in his hands, the order therefor reserving against the proceeds of sale of the machines any lien appellee had against the machines themselves.

August 14 bankrupt's personal property was sold at trustee's sale, the press and folder realizing $3,700.

August 27, 1929, the District Court denied the petition of the trustee to be subrogated to the right of Dwight Bros. Paper Company under its execution.

May 5, 1930, the referee ordered the allowance of appellee's claim as a priority upon the proceeds of the press and folder, which order the District Court affirmed June 30, 1931.

Concededly the law of Illinois will govern as to liens created under judgments of its courts. Section 9, c. 77, of the statutes of Illinois (Smith-Hurd Rev. St. 1931) provides that: "No execution shall bind the goods and chattels of the person against whom it is issued, until it is delivered to the sheriff or other proper officer to be executed; and for the better manifestation of the time, the sheriff or other officer shall, on receipt of such writ, indorse upon the back thereof the day of the month and year and hour when he received the same."

Section 8 provides: "Executions and writs of venditio rei exponas [venditioni exponas] shall be made returnable ninety days after the date thereof."

If an officer has levied upon personal property of the debtor before the writ is returnable, he may lawfully make sale of the property after the return date of the writ. Davis v. Moore, 103 Ill. 445; Willoughby v. Dewey, 63 Ill. 246; Phillips v. Dana, 3 Scam. 551. It is not disputed that appellee's judgment became a lien on the property in question from the time of delivery of the execution to the sheriff, and remained a lien until the return date of the writ; nor is it disputed that, if a lawful levy was made before the return date of the writ, the lien would be continued after the return date until sale of the property levied upon had been made. If, therefore, prior to the return date of this writ a lawful levy had been made upon the machines, and after the return day the property was advertised by the sheriff for sale under his writ, and the bankruptcy intervened before the date fixed for sale, the lien of the judgment upon the personal property of the debtor would persist notwithstanding the bankruptcy, since more than four months had intervened between the attaching of the lien and the bankruptcy.

Appellant contends that the sheriff did not take physical possession or do anything to segregate the machines from the rest of the debtor's property, and that therefore there was no lawful levy upon them. The return upon the execution states that upon levying upon the machines the sheriff placed a custodian in possession of them, and the contradictory evidence tends to show this was the fact, and the referee and District Court so found. The machines were not removed or segregated. The custodian was one of bankrupt's employees who worked regularly at the place. The machines were ponderous affairs, the press weighing upwards of twelve tons, and they would have to be taken down and apart in order to be removed from the place, the expense of which would have been $500 or $600.

In Freeman on Executions (2d Ed.) § 263, it is said: "And where the lessee has machinery and fixtures fixed to the realty, ponderous and incapable of manual delivery without a severance from the soil, it is said that the officer would not be justified in tearing out, severing, and removing them, nor need he put a watchman in charge." In Freeman v. Dawson, 110 U. S. 264, 4 S. Ct. 94, 98, 28 L. Ed. 141, the court said: "The lessee's interest in the fixtures arises out of the agreement contained in the lease, and of the manner and purpose of their annexation to the land, from which they could not be separated and removed without much labor and expense. It was not necessary that the officer should retain actual possession in order to keep alive a levy upon such property. Ashmun v. Williams, 8 Pick. [Mass.] 402."

In 23 C. J. 440, § 231, it is said: "The general rule is that fixtures and ponderous machinery, being incapable of actual possession, any notorious act of the officer asserting title under a levy is sufficient."

It is plain that there is a substantial difference in this regard between property of this nature and that which is readily movable, and particularly such as is part of a stock in trade for sale in the ordinary course of the debtor's business. These machines were not for sale, and it is not likely that any one would be misled or deceived through their being permitted to remain. Indeed, the evidence does not show any one to have been harmed or misled, and one of the referee's findings is to that effect.

Upon more or less controverted evidence the referee found that the levy was made in good faith in the presence of a considerable number of persons, and declaration to that effect was then publicly made by the officer, and the levy at once indorsed upon the writ.

An inquirer into the status of the property would have found on the records the judgment and the fact of the issue of the execution, and inquiry at the sheriff's office would have revealed the indorsement thereon and the further proceedings thereunder, which indicated the exact situation. We are of opinion that upon this record we are not at liberty to disturb the finding of the referee sustaining the validity of the levy.

But, says appellant, the levy, if good, became dormant through the failure of the execution creditor promptly to order the sale. We do not think that under the circumstances here appearing it can be said that the levy became dormant. Sweetser v. Matson, 153 Ill. 568, 39 N. E. 1086, 27 L. R. A. 374, 46 Am. St. Rep. 911; Everingham v. Nat. City Bank of Ottawa, 124 Ill. 527, 17 N. E. 26; Gilmore v. Davis, 84 Ill. 487; In re Zeis, 245 F. 737 (C. C. A. 2); In re Fraser, 261 F. 558 (D. C. N. Y.). But if it did become dormant, the effect would be only to let in ahead of the execution creditor another creditor obtaining a lien during such dormancy. (Same cases last above cited). The record discloses but one of such creditors—Dwight Bros. Paper Company, whose execution was placed in the sheriff's hands May 21, 1928, which was only a few days before bankruptcy intervened, and its lien was thus lost. It has asserted no lien. Indeed, its judgment was filed and allowed as a general claim, and dividend has been paid thereon. It is interesting, as well as significant, to note that the trustee filed a petition to be subrogated to the Dwight Bros. Paper Company lien, which petition was denied by the court long before the petition herein was filed, and no appeal was taken from such order of denial.

But if appellee's lien did become dormant through delay in causing sheriff to proceed to sale thereunder, it ceased to be dormant when positive action was taken looking toward its assertion and the sale of the chattels levied on. This occurred May 26, 1928, when the sheriff advertised for sale the press and folding machine under the Butler Company execution. The lien of a levy which has become dormant may have its priority revived by a positive act indicating a purpose and undertaking to make it effective, and this will relate back to the time the judgment became a lien. Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; In re Zeis, supra.

When, therefore, the bankruptcy intervened, the lien of this levy, even though dormant through delay in the proceedings to realize on the property levied upon, had been revived three days before the bankruptcy, when the property was in process of being sold under the levy. The trustee therefore, taking under the rights of an execution creditor as of the date of the filing of the petition in bankruptcy (Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275; Zartman v. First National Bank of Waterloo, 216 U. S. 134, 30 S. Ct. 368, 54 L. Ed. 418; In re Zeis, supra), took the property in question subject to appellee's lien thereon existing for more than four months before.

We are of opinion that the case was properly disposed of by the District Court, and its order is affirmed.