MINNICH *v.* GARDNER ET AL.

No. 669. Argued March 15, 16, 1934.—Decided April 2, 1934.

*Mr. John A. Minnich, pro se.*

*Mr. A. E. Kountz,* with whom *Messrs. Clarence A. Fry* and *J. Colvin Wright* were on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner, on March 21, 1929, recovered two judgments in a Pennsylvania state court against the King Motor Company, the larger one being for something over $6,000. March 26 following, execution was issued thereon, and on March 27 the sheriff levied under the execution upon the personal property of the motor company, endorsing his

levy upon the writ. On April 15 the sheriff returned "goods on hand not sold." Subsequently, on various dates, a writ, an alias writ, and pluries writs of *venditioni exponas* were issued, upon each of which the sheriff made return to the effect that goods on hand were not sold or writ not executed for want of time. On August 21, 1930, nearly seventeen months after the levy of execution, petitioner directed the sheriff in writing that he must advertise all the goods taken under the original levy and sell them immediately. On the same day the sheriff advertised the goods for sale to be held August 29 following. August 25 a Pennsylvania state court of equity appointed a receiver for the King Motor Company and ordered a stay of the execution until final determination of the matter. August 30 an involuntary petition in bankruptcy was filed against the motor company, upon which an adjudication of bankruptcy was made on September 19. All the personal property of the motor company having been sold by the trustee, it was agreed that $1,776.17, being fifty per cent, of the proceeds of such sale, represented the value of the goods levied upon in behalf of petitioner on March 27, 1929, and included in the trustee's sale. The referee in bankruptcy, after deducting for the costs which would have been incurred if the goods had been sold by the sheriff, awarded that sum to petitioner.

The referee found, among other things, that petitioner had issued the writ of execution with an intention to collect his money, which he never relinquished or interrupted; that he had no intention to refrain from exacting payment or helping the debtor to hinder other creditors; that the indulgence was good business policy when it is considered that petitioner realized less than one-third of the amount called for by the execution. The referee concluded that petitioner had acted in good faith.

On review the federal district court, sitting in bankruptcy, held that petitioner had no valid lien against the

fund and was not entitled to any distribution ahead of certain priority wage claims. The circuit court of appeals affirmed, holding that petitioner had made his levy solely for the purpose of acquiring a lien without a genuine intention of proceeding promptly for the collection of his debt, that he had not met the test of good faith, and, therefore, had failed to establish his lien upon the fund. 66 F. (2d) 561.

Conceding that petitioner intended not to proceed promptly for the collection of his debt, and that his levy was made solely for the purpose of acquiring a lien, we think the conclusion drawn therefrom by the lower court—that he had failed to establish his lien upon the fund—does not follow, since it fails to give effect to the positive order of the petitioner, made nine days before the bankruptcy proceedings were begun, directing the sheriff to proceed at once under the original levy to advertise for sale and sell the goods. The effect of the intention and purpose ascribed to petitioner would be to destroy the priority of the lien obtained by his levy and thereby expose him to the risk of having his execution postponed in favor of purchasers and subsequent execution creditors. It, nevertheless, would continue good against the judgment debtor and all others not acquiring rights or liens. This, undoubtedly, is the general rule (e.g., *In re Zeis*, 245 Fed. 737, 739; *In re Schwab Printing Co.*, 59 F. (2d) 726, 728; *Keel* v. *Larkin*, 72 Ala. 493, 502–503), and is fully recognized by the Pennsylvania decisions. *Kent, Santee & Co.'s Appeal*, 87 Pa. 165, 167; *McLaughlin* v. *McLaughlin*, 85 Pa. 317, 322; *Mentz* v. *Hamman*, 5 Whart. (Pa.) 150, 153; *Fletcher's Appeal*, 17 Leg. Int. (Phila. 1860) 300. In *Eberle* v. *Mayer*, 1 Rawle (Pa.) 366, it was held that an order given by an execution creditor to stay proceedings on his execution until further directions was a waiver of his priority in favor of a second execution received by the sheriff during the pendency of the stay. By

such order, it was said (p. 369), " the plaintiff's execution must be considered as dormant, and constructively fraudulent, as against the subsequent execution."

The general rule is equally well established that in the absence of any intervening rights or liens a direction to the sheriff to proceed with the sale has the effect of reviving the rights obtained by the original levy, that is to say, of reviving not the lien, but the priority of the lien as against all other liens and rights acquired after such direction. *In re Zeis, supra; In re Schwab Printing Co., supra; Miller* v. *Kosch,* 74 Hun (N.Y.) 50, 52; 26 N.Y.S. 183; *Sweetser* v. *Matson,* 153 Ill. 568, 584; 39 N.E. 1086. We are of opinion that this general rule obtains in Pennsylvania. It was recognized as applicable to a Pennsylvania judgment as early as 1811 in *Berry* v. *Smith,* 3 Wash.C.C. 60, Fed. Cas. No. 1359. The judgment considered in that case had been rendered by the Supreme Court of Pennsylvania, and a *fieri facias* had issued with direction to the sheriff not to levy it until further instructions. A few days later the sheriff was directed to proceed with the levy. It was held that a second execution levied in the meantime, if pursued, would take preference, but otherwise if the second execution were issued after the countermand. Mr. Justice Washington, delivering the opinion, said: " The order of suspension deprives the act of the officer, in pursuance of it, of all its force and effect, until it is restored by a countermand; and if, in the meantime, a second execution is taken out and levied, the former must be postponed;—not so, if the second execution issues subsequent to such countermand; and upon this distinction, the decision of the case of *Huber* v. *Schnell,* [1 Browne, 16] in the common pleas of this state, seems to be entirely correct."

In *Freeburger's Appeal,* 40 Pa. 244, it was held that an execution issued only for the purpose of a lien will be postponed to a subsequent execution issued in good faith. It

appeared there that the sheriff had been instructed, when the execution was placed in his hands, not to proceed until further orders, and thereafter to make a levy but not sell. Subsequently the sheriff was told to go on and sell; but the evidence did not make clear that the last order was given prior to the issue of the second execution. The court, therefore, sustained the lien of the second execution, saying, " All this," referring to the evidence, " leaves it quite uncertain whether the orders to sell under the first execution were prior or subsequent to the issue of the second. But as it is clearly established that the first was used merely as a security until those orders were given, it is incumbent upon Cameron & Billmeyer [first judgment creditors] to prove affirmatively that they were given before the sheriff received the second writ. This they failed to do, and their execution, therefore, has lost its priority." This decision clearly imports the converse of the proposition, namely, that if it had been shown that the orders to sell were given before the receipt of the second execution, the first execution would not have lost its priority. See 2 Freeman on Executions, § 206, p. 1043, n. 138. Our attention has been called to no Pennsylvania decision, and our examination discloses none, which conflicts with that conclusion. In the present case, the proof establishes and the court below concedes that an order to sell, which antedated by nine days the filing of the involuntary petition in bankruptcy, was in fact given.

Since the effect of that order was to revive the priority of the lien, not to create a new one, and since that lien had attached long prior to the beginning of the four months' period preceding the filing of the petition in bankruptcy, it was not affected by the provisions of § 67 (f) of the Bankruptcy Act, which declare all liens obtained, etc., within such period null and void. *In re Zeis, supra,* 740–741; *In re Schwab Printing Co., supra,* 728, and cases cited.

Respondents suggest that, in any event, the case involves the further question whether, as wage claimants, each of them is entitled under a designated Pennsylvania statute to priority to the extent of $200 over the execution creditor. So far as the record discloses, that question is raised here for the first time. The report of the referee recites that a preference for the claims, not to exceed $600 to each claimant, was sought under § 64 (b) (5) of the Bankruptcy Act. That subdivision has no relation to claims arising under state law, and no mention of any such claims is made in the referee's report or in the decision of either of the courts below or in the record. In no view of the matter is the question properly before us for consideration.

*Decree reversed.*