**Dr. Harry KAPLAN, Appellant,**

v.

**Samuel HIRSH, Appellee.**

No. 81–1789.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1982.

Decided April 23, 1982.

Jonathan J. Schraub, Washington, D.C. (George J. Shapiro, John J. Prendergast, Ltd., Alexandria, Va., on brief), for appellant.

Matthew A. Clary, III, Clary & Pijor, P.C., Springfield, Va., on brief, for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and WILKINS,* District Judge.

K.K. HALL, Circuit Judge:

Kaplan obtained a judgment against Hirsh in the district court for the District of Columbia. Hirsh filed a timely notice of appeal but did not file a supersedeas bond to stay execution on the judgment. Thereafter, Kaplan attempted to register the judgment in the district court in Maryland, pursuant to 28 U.S.C. § 1963 which permits a judgment creditor to register his judgment in foreign districts once it has become "final by appeal or expiration of time for appeal." The Maryland district court refused to register the judgment, construing the statutory language to mean that the mere pendency of an appeal precludes registration in a foreign district. We disagree. For the reasons outlined below, we conclude that a judgment on appeal is nonetheless "final" for purposes of the registration statute unless the judgment debtor has filed a supersedeas bond to stay execution.[1]

When an appeal is taken, execution on a money judgment may be stayed by filing a supersedeas bond pursuant to Fed. R.Civ.P. 62(d) or Fed.R.App.P. 8. The appealing party is not required to obtain a stay, but if he does not do so, the creditor

---

* Honorable William W. Wilkins, United States District Judge for the District of South Carolina, sitting by designation.

1. We write on a relatively clean slate. We can find no circuit court opinion directly addressing this question. In *Bros, Inc. v. W.E. Grace Mfg. Co.*, 261 F.2d 428 (5th Cir.1958), the court, in dictum, noted a position *contra* to the one we take today without any discussion. In *Goldman v. Meredith*, 596 F.2d 1353 (8th Cir.1979), the court merely noted that the clerk had refused to register a judgment which had been appealed but not stayed. The court did not address the propriety of the clerk's actions.

Thus, this is virtually a question of first impression at the circuit court level.

Several district courts have considered the question either summarily or in dictum. *E.g., Goldsmith v. Midwest Energy,* 90 F.R.D. 249 (N.D.Ohio 1980); *Lipton v. Schmertz,* 68 F.R.D. 249 (S.D.N.Y.1974); *Slade v. Dickinson,* 82 F.Supp. 416 (W.D.Mich.1949). However, only two district courts appear to have given this question more than cursory attention, *Dorey v. Dorey,* 77 F.R.D. 721 (N.D.Ala.1978) and *Abegglen v. Burnham,* 94 F.Supp. 484 (D.Utah 1950). We find *Dorey* to be the more carefully reasoned and persuasive of the two.

may proceed to execution on the judgment. *Sterling v. Blackwelder,* 405 F.2d 884 (4th Cir.1969); Moore's Federal Practice ¶ 62.06, ¶ 208.03.

Problems arise, however, when the creditor tries to execute his judgment in another state. The question then is, how does the registration statute fit with the Rules which require a supersedeas bond in order to stay a judgment pending appeal?

At least one court has recognized the anomaly created when the statute is not viewed *in pari materia* with the Rules:

> The [Rules] would permit a judgment creditor to levy against assets of his judgment debtor, unless supersedeas bond were posted, while [28 U.S.C. § 1963] would prevent the same, bond or no bond.... There is no sense to be found in such an incongruity, and in light of the policy in the federal courts against unsecured stays of execution ... no justice either. (citations omitted)

*I.T.T. Credit Co. v. Lawco,* 86 F.R.D. 708, 712 (S.D.W.Va.1980).

██ If § 1963 is not interpreted to require a supersedeas bond to stay execution, then it creates an unconstitutional disparity in rights between judgment debtors, depending on the location of their assets. A debtor whose property is within the jurisdiction of the court must file a bond to avoid execution of a judgment against him while he awaits the outcome of his appeal. Yet, if read without a bond requirement, the registration statute would grant an automatic stay to a debtor whose property is

outside of the district when he files his appeal. If this were the case, then the statute would deny equal protection of the laws to debtors whose assets are within the district. We cannot countenance such an interpretation.

Also, if a supersedeas bond is not required under § 1963, the statute could encourage a debtor to escape his creditor by merely filing an appeal, even on frivolous grounds, and then transferring his property to another state. We do not believe that Congress intended to open the way for debtors to abuse the appellate process in this way.[2]

Finally, we believe that our construction of the finality requirement best serves the overall design of § 1963, which was intended to be a summary enforcement mechanism, an aid to creditors. Admittedly, a judgment creditor may be able to file an independent action on his judgment to gain enforcement in foreign districts, depending on jurisdictional requirements.[3] Such a suit upon a judgment would result in a judgment upon a judgment; the facts litigated in the first court are *res judicata* in the second. *Bros, Inc. v. W.E. Grace Mfg. Co.,* 261 F.2d 428 (1958);[4] *I.T.T. Credit Co. v. Lawco, supra.* However, even if it is available, this is an unnecessarily circuitous route. The registration statute relieves creditors and debtors of the burden of litigating successive suits to a virtually foregone conclusion. We should not interpret one ambiguous clause as a restriction on the use of this abbreviated procedure.

**2.** The dissent argues that the registration statute was intended to be only "half a loaf." Yet it is inconceivable that Congress would have intended to enact a collection procedure which is nonetheless absolutely ineffective in a case where the debtor avoids execution by systematically transferring his assets from state to state. If § 1963 were read to permit this type of maneuvering, then it made no improvement on the separate judgment procedure which preceded its enactment. Under this construction, the statute would not amount to half a loaf; it wouldn't even be a crumb.

**3.** An independent action is often not available as an alternative collection procedure. This case is a perfect example. Hirsh could not be

found in Maryland where his property was located. As a result, Kaplan could not get service of process on Hirsh in Maryland, and therefore could not institute a suit to execute his District of Columbia judgment against Hirsh's assets in Maryland.

**4.** *Bros, Inc.* held that a judgment until reversed was enforceable and therefore *res judicata.* The *Bros* court, however, refused to take the next step, as we do today, to hold that if a judgment is automatically enforceable as *res judicata* in another court, then a suit on a judgment is a waste of time when summary enforcement is available through the 28 U.S.C. § 1963.

Accordingly, the decision of the district court is reversed, 91 F.R.D. 106.

REVERSED.

MURNAGHAN, Circuit Judge, dissenting:

The panel majority adopts a construction of the registration of judgments statute[1] which is altogether inconsistent with the statutory language and foreclosed by the legislative history. Since I am unable to reconcile the language "final by appeal or expiration of time for appeal" and the statute's history with the result reached by the majority, I dissent.

I.

My position, simply put, is that a judgment is not "final by appeal" if an appeal is pending. Looking for the moment solely at the language of the statute, it is difficult to contend otherwise. A judgment which may be vacated or reversed by an appellate court is not "final" in the ordinary sense of the word, irrespective of whether the appellant has posted a *supersedeas* bond. Such a still contested judgment does not necessarily terminate or conclude the controversy.

The majority contends, however, that, where no bond has been filed, a judgment is "final by appeal" notwithstanding a pending appeal. Implicit in its opinion is the notion that what is relevant is not finality, but rather, collectibility. If no bond has been posted, then the judgment has, perhaps, some aspects of finality in the sense that it may be collected, although it may subsequently be disturbed on appeal.

Still restricting the analysis to the statutory language, it is clear that finality does not here refer to collectibility. In the first place, Congress could hardly mean by finality a collection that would have to be paid back if the appeal should ultimately succeed. In the second place, Congress said just the contrary. The majority's reading is flatly contradicted by the statute's reference to "expiration of time for appeal." A prevailing party can collect a judgment ten days after it is rendered, unless a stay is obtained. F.R.Civ.P. 62(a). The statute clearly provides, however, that registration in another district of the judgment, even though it has become fully collectible through the expiration of ten days and the failure to post a *supersedeas* bond or otherwise obtain a stay, is not permitted until the thirty day period[2] in which an appeal may be taken has run. The majority's view thus leads to the conclusion that "final" in the statute means what ordinary usage of the word "final" indicates for the first thirty days after a judgment is rendered, but on day thirty-one it mystically acquires a whole new meaning; the possibility of an appeal is the crucial factor for the first thirty days, yet on the majority's theory collectibility abruptly becomes paramount thereafter, even though the possible appeal has ripened into an actual one. It is a startling approach to ascribe to Congress two quite different, and indeed conflicting, meanings for the same clear statutory language, depending on which of two different times during the proceedings is involved.

II.

The legislative history fully confirms that Congress did not intend to permit registration while an appeal was pending. Because of uncertainty as to whether substantive rights were affected, what had been proposed as Rule 77 for inclusion in the new

---

1. 28 U.S.C. § 1963 provides in pertinent part:

 A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

2. The general rule requires that a notice of appeal from a district court judgment be filed "within thirty days after the entry of such judgment." 28 U.S.C. § 2107. There are, of course, exceptions. For example, in an action in which the United States or an officer or agency thereof is a party, the time limit as to all parties is sixty days. *Id.*

Federal Rules of Civil Procedure was instead enacted by Congress.[3] See Reviser's Note to 28 U.S.C. § 1963 ("This section follows the recommendation of the Supreme Court's Advisory Committee on Federal Rules of Civil Procedure (1937)...."). Congress did not materially change the proposed rule,[4] and the rule's evolution in the Advisory Committee is instructive.

Early drafts of the rule differed substantially from the rule adopted by the Committee in that they proposed making collectibility, not finality of judgment, the test. A 1936 draft provided in part:

> Whenever any interlocutory or final order or judgment in personam shall be rendered by any federal court ... such order or judgment, if still valid and enforceable, may be registered in any other federal court ... and for the purpose of enforcement or utilization it shall then be deemed to be, as of that date, an order or judgment rendered by the court wherein it is registered....
>
> ....
>
> If a stay of execution or a supersedeas bond or an injunction pending appeal is not in force in the court which originally rendered the order or judgment, or if the original order or judgment has not been set aside, vacated, or reversed, an order or judgment registered with a district court may be enforced where registered in the manner and under the circumstances provided for the enforcement of an original order or judgment of such court....

Tentative Draft II, Rule A31 (January 15, 1936), in 3 U.S. Supreme Court Advisory Committee on Rules for Civil Procedure, *Materials 1934–1939, supra.* In the 1936 draft, once the judgment was registered, it could be enforced by the court of registry unless a stay was obtained.

That concept was retained in a number of subsequent drafts, continuing until April 1937. However, in 1937, the Chairman of the Advisory Committee on Civil Rules, William D. Mitchell, proposed that Rule 77 be amended by inserting the words "and which has become final by expiration of the time for appeal or by mandate on appeal" in the first sentence after "court." William D. Mitchell Amendments, in 13 U.S. Supreme Court Advisory Committee on Rules for Civil Procedure, *Materials 1934–1939, supra.*[5] The proposed amendment was adopted, and the first sentence of the rule submitted to the Supreme Court provided:

> A judgment entered in any district court and which has become final through expiration of the time for appeal or by man-

---

**3.** There was concern among members of the Advisory Committee and other attorneys that the rule might affect substantive rights, and therefore should be enacted legislatively. The Advisory Committee determined that the rule was procedural, but the Supreme Court disagreed, and left the rule for congressional consideration. *See, e.g., Memorandum in Support of Rule 77,* 14 U.S. Supreme Court Advisory Committee on Rules for Civil Procedure, *Materials 1934–1939* (Papers of Edgar B. Tolman, University of Chicago Law School Library).

**4.** Rule 77 as proposed provided in pertinent part:

> A judgment entered in any district court and which has become final through expiration of the time for appeal or by mandate on appeal may be registered in any other district court by filing therein an authenticated copy of the judgment.

Congress' deletion of the words "mandate on" evidently indicates that the meaning of "final by appeal" was thought to be so clear that the reference to issuance of the mandate to signify finality was redundant. Rule 77's pertinent language following the deletion of "mandate on" consequently read "final through expiration of the time for appeal or by appeal." That language is substantially identical to the final statutory language of 28 U.S.C. § 1963 providing "final by appeal or expiration of time for appeal."

**5.** It appears that the idea for the amendment was first suggested by D. Hadsell, a practicing attorney from San Francisco, who wrote the committee on September 8, 1937:

> [R]egistration of a judgment should not be permitted in another District Court until it has become final in the District Court where rendered and that would mean that each such registration could not occur until after there has been an appeal, and the case had finally been decided on appeal, etc.

Letter from D. Hadsell to Advisory Committee on Rules for Civil Procedure (September 8, 1937), in 13 U.S. Supreme Court Advisory Committee on Rules for Civil Procedure, *Materials 1934–1939, supra.*

date on appeal may be registered in any other district court by filing therein an authenticated copy of the judgment.

Final Report of the Advisory Committee on Rules (November, 1937), in 14 U.S. Supreme Court Advisory Committee on Rules for Civil Procedure, *Materials 1934–1939, supra.* The purpose of the amendment was succinctly and unambiguously explained in an accompanying note:

> The Committee believed that a judgment should not be registered in another district *while there is any chance of modification on appeal.*

*Id.* (emphasis supplied).

Thus, by permitting registration in the present case despite the pending appeal and possible modification of the judgment, the majority has run against the clear legislative intent and has resuscitated a rule which the Advisory Committee had knowingly put to death.

### III.

The majority argues that the literal interpretation of the statute would deprive some judgment debtors of equal protection.[6] The premise of the constitutional argument is the assertion that a judgment debtor whose property is within the district must file a bond to avoid execution pending appeal, while a debtor whose property is outside of the district is granted an automatic stay, since his creditor must file an independent action on the judgment and suffer the attendant delay in order to collect the debt.[7]

Yet the argument proves too much. Prior to the passage of 28 U.S.C. § 1963, the only way to enforce a judgment—even an altogether final one—in another district was to bring an independent action. In the case of a debtor whose property was located within the district where the judgment was rendered, immediate execution was possible unless the debtor filed a bond, but debtors whose property was located elsewhere than in the district where judgment was entered benefited from the same "automatic stay" which the majority finds unconstitutional. Then the "stay" pending obtention of an independent judgment remained in effect even after appellate finality had occurred through affirmance or by expiration of time for appeal.

The statute ameliorated the situation at that "finality" level. Congress, however, decided not to extend the relief even further to encompass non-final but collectible judgments. The half a loaf was better than none, and affords no viable constitutional argument because its relief did not go as far as all creditors would like. There are, after all, possible problems of docket clogging through registrations in multiple districts, as well as harassment of some defendants. Congress was constitutionally permitted to take such considerations into account.

Indeed, if, as the majority argues, the delay which accompanies an independent action creates an unconstitutional disparity in treatment of debtors, then the procedure which, from the very formation of the United States, had always existed prior to the passage of 28 U.S.C. § 1963 was unconstitutional as well. The majority's constitutional analysis thus leaves two alternatives. Either the statute is of no significance, because it simply calls for a result which has, in any event, in the total absence of any statute, always been constitutionally mandated, or it is unconstitutional, in which case it should be held ineffective rather than extended beyond its scope as written.[8]

---

**6.** Since a federal statute is at issue, the Fourteenth Amendment has no application. The majority no doubt relies on equal protection principles implicit in the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**7.** The majority concedes, as it must, that extraterritorial execution can be accomplished by the filing of an independent suit upon the judgment. *See, e.g., Bros., Inc. v. W.E. Grace Mfg.*

*Co.,* 261 F.2d 428, 433 n. 4 (5th Cir.1958); *Slade v. Dickinson,* 82 F.Supp. 416, 418 (W.D.Mich. 1949). *See also* 7B Moore's Federal Practice § 1963 at 853–54 (2d ed. 1981).

**8.** The majority's analysis implies that the Constitution requires that a judgment be capable of registration ten days after it is entered, since at that point it becomes collectible. The statute, however, would not permit registration until expiration of the thirty day appeal period.

The first result ignores well-founded notions of dual sovereignty which provide the underpinnings of our judicial system. We should be very slow to pronounce unconstitutional a fundamental concept on which the entire system is based. If a judgment entered in one judicial district is indistinguishable from one entered in another district, then similarly a complaint filed in one district should automatically be capable of service nationwide. The implications for our judicial system are staggering, and I respectfully submit that there is no occasion here for the taking of so gigantic a step.

The second alternative resulting from the majority's analysis, on the other hand, would cause us to revert to the circumstances in force prior to enactment of 28 U.S.C. § 1963, and so would lead to denial of registration in the present case—the result which I contend should be reached, not the result to which the majority has come.

A sounder conclusion is that neither the prior procedure nor the procedure under 28 U.S.C. § 1963 is unconstitutional. There is, it is true, a slight difference between the judgment creditor's access to execution in the district where the judgment was rendered and the situation of that creditor in another district. In the former district, he may move immediately to seek execution. In the latter he may also do so, but only after first filing a suit on the judgment and obtaining judgment on it, as to which no *supersedeas* bond has been filed.[9]

However, that does not indicate a difference in treatment of two persons. All judgment creditors are treated just the same. They all have access to an identical system in which direct action to obtain execution is possible in the district where judgment has been rendered, and a new suit to judgment is required in any other district where judgment has not been obtained and where the creditor wants to effect collection through execution.

It simply does not wash to say that the creditor without a judgment in the district where he wishes to effect collection must be allowed direct execution, without judgment, simply because other creditors *who do have judgments in that district* may do so. Constitutionally at least, it is not asking too much to require every creditor first to secure a judgment of the district if he wishes to collect before the case has become final by appeal.

The majority's constitutional analysis is also flawed in its implicit assumption that a debtor with assets in the judgment-rendering district is so like unto a debtor whose assets are elsewhere that identity of treatment for creditors seeking to collect from him is required to achieve equal protection of the laws. To the contrary, they are not identical. In light of our system of dual sovereignty, under which the procedural rights of parties are often dictated by geographical factors, it can hardly be contended that two debtors with assets in different states are similarly situated.

Moreover, assuming that the statute should be viewed as authorizing disparate treatment of similarly situated individuals, it would by no means follow that it is unconstitutional. Absent a suspect classification or fundamental right, the statute survives if it rationally furthers a legitimate governmental interest. *E.g., San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973); *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). The legislative history indicates

---

Thus the majority must conclude that the statute is unconstitutionally. restrictive, and must extend it beyond its clear terms.

**9.** The availability of extraterritorial execution refutes the majority's reliance on F.R.Civ.P. 62(d) and F.R.App.P. 8. Those rules permit an appellant to obtain a stay pending appeal by filing a *supersedeas* bond. The majority argues that if the statute and rules are viewed *in pari materia,* registration must be permitted unless

a bond has been filed. On the contrary, if no bond is filed but an appeal is pending, extraterritorial execution can be effectuated by filing an independent action rather than by registration. The registration statute does not circumvent the rules and permit a litigant to obtain a stay without filing a bond. Only by filing a bond can a party prevent extraterritorial execution in the form of an independent action.

that Congress wished to limit the availability of the procedural shortcut afforded by the registration statute to cases where there is no possibility of reversal after registration of and execution on the judgment. Were we vested with the legislative power to determine whether the risk of reversal should or should not warrant restricting the availability of registration, I might reach the result preferred by the majority. Since our task is instead the limited judicial one of determining whether there is a rational basis for the statute, I have no doubt that the statute passes constitutional muster.[10]

For all those reasons, I dissent.

---

10. The majority does not raise the other supposed constitutional problems discussed in *Dorey v. Dorey,* 77 F.R.D. 721 (N.D.Ala.1978). The conclusion in *Dorey* that the statute, if interpreted literally, would violate the Privileges and Immunities Clause, the Due Process Clause, the doctrine of separation of powers, and the Full Faith and Credit Clause, does not withstand analysis. The premise is the court's assertion that the statute, if interpreted literally, would "[deprive] a final and fully enforceable judgment of a United States District Court of its power outside the limited geographical area of the district within which the judgment was obtained. . . ." *Id.* at 725. Since extraterritorial execution can be effected by the filing of an independent action, no judgment is deprived of extraterritorial power, and there are no constitutional problems.