Morris S. MOSES, et al., Plaintiffs,

v.

K–MART CORPORATION, Defendant.

No. 94–488–CIV–ATKINS.

United States District Court,
S.D. Florida.

April 2, 1996.

Charles F. Henley, Jr., G. Thomas Harper, Jacksonville, FL, for defendant.

Harriet Lewis, Hollywood, FL, for plaintiffs.

### MEMORANDUM OPINION

ATKINS, Senior District Judge.

THIS MATTER is before the Court concerning this Court's *Order Denying Defendant's Motion to Expedite Return of Seized Motions,* filed February 29, 1996. Given the emergency nature of Defendant's Motion, the Court did not have the opportunity to include a discussion of the legal and factual determinations that went into the Court's denial of the motion. This *Memorandum Opinion* is intended to supplement that *Order* and provide the missing discussion. In no way should this *Memorandum Opinion* be taken as an alteration or enlargement of any of this Court's earlier rulings.

The *Order* of February 29, 1996 concerned an attempt by Defendant to have the Court order the return of $52,723 seized pursuant to a writ of execution for an outstanding judgment in *Moses, et al. v. K–Mart,* Case No. 94–488–CIV–ATKINS. In order to fully explain the Court's decision in the previous *Order,* it is necessary that a review of the facts and circumstances leading up to the seizure of $52,723 be undertaken. A review of the facts demonstrates that neither the equities nor the facts of this case warrant an intervention by the Court in the process of a plaintiff executing judgment.

### FACTS

On July 25, 1995, the jury rendered a verdict in this case finding that K–Mart had engaged in illegal and wilful age discrimination in its treatment of three former employees. Less than two weeks later, the jury awarded to those three plaintiffs, just under 2.2 million dollars. After review of a number of post-trial matters, the Court entered *Final Judgment* on October 31, 1995, incorpo-

rating an earlier decision to remit the total award to $920,982. After the entry of *Final Judgment,* an automatic ten-day stay of execution came into effect pursuant to Federal Rule of Civil Procedure ("FRCP") 62(a). As a result, K–Mart was only shielded from any attempt by Plaintiffs to recover the judgment until November 14, 1995. After that date, K–Mart's assets became "fair game" and were legitimate targets for seizure in satisfaction of the outstanding judgment.[1]

Although K–Mart filed a timely motion for judgment after trial, or alternatively, motion for new trial on November 13, 1995, no request was made and no provision granted extending the stay past November 14, 1995, even though such relief was available under FRCP 62(b) and may have been appropriate in this case.[2] On November 14, 1995, the stay expired without the posting of a bond or other satisfaction of judgment.

On January 5, 1996, the Court denied K–Mart's motion for new trial or judgment after trial. Despite the denial of this motion no action was taken either by Plaintiffs or by K–Mart to satisfy the judgment until January 31, 1996 when Plaintiffs finally sought from the Clerk of the Court, and received, a writ of execution against K–Mart for $920,982. Over six-months had passed since the jury's verdict, and more than three months had passed since the stay of execution expired.

K–Mart's assets had been available to Plaintiffs as satisfaction for the judgment since the middle of November 1995, yet, remarkably, no action had been taken to seize those assets or otherwise stay execution under the judgment.

After the issuance of the writ, and within the permissible period of time, K–Mart filed its Notice of Appeal on February 2, 1996. Included with the Notice was a request, pursuant to FRCP 62(d), to stay execution of the judgment pending the resolution of the appeal. According to the express language of FRCP 62(d):

> When an appeal is taken the appellant *by giving a supersedeas bond* may obtain a stay [of execution]. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. *The stay is effective when the supersedeas bond is approved by the court*

Upon receiving K–Mart's motion for a stay, the Court requested an expedited response from Plaintiffs, and received one on February 9, 1996. Later that same day, despite Plaintiffs' protestations and allegations of K–Mart's impending bankruptcy, this Court granted the Motion at 12:10 p.m. declaring that "the stay will be effective upon this Court's approval of a supersedeas bond in the amount of $2,000,000." [3]

---

1. FRCP 62(a) states:

     (a) *Automatic Stay....* no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry ...

2. FRCP 62(b) states:

     (b) *Stay on Motion for New Trial or for Judgment.* In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment....

3. K–Mart, in its motion for a stay pending appeal, did not request that the Court set the amount of the bond and seemingly assumed that the bond would only be set at the amount of judgment. The Court, in accordance with applicable law, determined that the amount of judgment was insufficient to secure the interests of Plaintiffs. For this reason, the Court included an amount for attorneys fees and costs, interest, and costs of appeal. K–Mart has since objected to

this Court's decision to include yet to be determined attorney's fees and costs.

The Court does admit that, even as of this date, no decision has been made as to the amount of Plaintiffs' entitlement to attorney's fees and costs. However, the Court notes that pursuant to 29 U.S.C. § 626(b), and by incorporation 29 U.S.C. § 216(b), the Court is *compelled* to award attorney's fees and costs. The Court lacks discretion to refuse such an award. As such, K–Mart is on notice that some award of attorney's fees and costs must be made against it.

As of February 9, 1996, this Court was in receipt of Plaintiffs' motions for attorney's fees and costs which requested amounts totaling almost 1.1 million dollars. Even if the Court were to lower that amount by 50% (an amount requested by K–Mart), the total would still be approximately $500,000. Given the mandatory nature of an award of attorney's fees and costs, this Court felt that the interests of justice and judicial economy would be best served by setting an amount (indeed, the amount of $2,000,000 is somewhat low in the event that a higher amount

A copy of the order was faxed to both K–Mart and Plaintiffs. Approximately two hours later, the Court received a motion for clarification, via fax, from Plaintiffs. The Court did not request nor did it expect any response from K–Mart. A motion for clarification merely asks for the Court to state, more clearly, its understanding of the scope and intent of the Order. K–Mart's input would not have been helpful or appropriate.[4] The Court granted Plaintiffs' request and again reiterated that the stay was not effective until a bond, in the amount of $2,000,000 was approved by the Court and posted as the rule contemplates.

On February 12, 1996, Plaintiffs, apparently convinced that K–Mart was financially unstable, moved this Court in an *ex parte* motion, to order the U.S. Marshal to effectuate service of process on the writ of execution by 2:00 p.m. that same day. The Court declined to become actively involved in the issue, and requested the Marshall's Office and counsel for Plaintiffs to work the procedures out between them. In the *Order Denying Plaintiffs' Emergency Verified Motion to Order U.S. Marshal's Office to Effectuate service of Process of Writ of Execution,* this Court held that:

> This Court does not wish to dictate when and where the U.S. Marshal's Office must execute the subject writ of execution. The minutiae of seizures are a matter within the sound discretion of that Office, and this Court will not interfere until such time as it can be shown that the U.S. Marshal is clearly outside the boundaries of its discretion;
>
> ... [t]he Court is confident that the Marshal's Office will carry out is [*sic*] obligations to enforce the writ in an appro-

priate and timely manner, the motion is DENIED.[5]

It was not until sometime around 3:00 p.m. that same day that the Court received an *Emergency Motion for Stay Pending Filing of Supersedeas Bond by Thursday, February 15, 1996 by 5 O'clock p.m.* from K–Mart. At that late hour, the Court was forced to initiate contact with counsel for Plaintiffs to see if there was any objection to the motion. The Court soon discovered that members of the United States Marshal's Office and counsel for Plaintiff were either en route, or in the parking lot of a K–Mart store for the purpose of executing Plaintiffs' writ. The Marshal's Office informed the Court that it would wait until 5:00 p.m. that day to hear from the Court on the status of the motion. If by 5:00 p.m. the Marshal's Office had not heard from the Court, or was informed the motion was denied, the writ of execution would be enforced. Seemingly, the method chosen for enforcement of the writ was the seizure of funds from store registers.[6]

The Court, hoping to find a workable solution for all parties, attempted to address Plaintiffs' concerns about K–Mart's alleged instability by suggesting that counsel for K–Mart obtain some sort of promise from his client that no bankruptcy proceedings would be filed prior to Thursday, February 15, 1996 at 5:00 p.m. (the requested time of the stay). This request was not to ease any fears that *this* Court may have had about K–Mart's alleged instability, but rather was intended to allay Plaintiffs' fears, and find a mutual alternative to the highly public seizure of K–Mart's assets.

At 4:45 p.m., February 12, 1996, this Court received a letter from Charles F. Henley which stated:

---

of attorney's fees and costs is awarded above that of $500,000) that would protect Plaintiffs' interests, including the judgment (including attorney's fees and costs), interest, and costs and attorney's fees associated with the appeal if appropriate.

4. The Court would like to note that even though the express language of the Order stated that the stay was effective only upon the approval of the bond, Plaintiffs' apparent confusion on this issue (as evidenced by their motion for clarification) required that the Court state, again, that the stay would not be effective until the bond was approved.

5. It should be noted, as is apparent, that at no time did Plaintiffs' urgings to the Court that K–Mart was in impending bankruptcy, sway this Court to grant Plaintiffs' motion or to order the Marshal to execute immediately the judgment against K–Mart.

6. The Court had no knowledge, and did not play a part, in the United States Marshal's decision to enforce the writ in this manner.

Pursuant to our Motion filed this afternoon, I have talked with Sherry McMillan, Corporate counsel for K–Mart Corporation in Troy, Michigan. Ms. McMillan has assured me that Kmart has no plans nor are they contemplating the filing of any bankruptcy petitions any time this week. Therefore, I am comfortable with advising the Court of that fact.

The Court immediately contacted counsel for Plaintiffs, in the parking lot of K–Mart, and informed them of the letter. Plaintiffs maintained that they vehemently opposed the stay, and requested that the Court deny the Motion.

The Court, without an agreement and under limited time constraints, determined that the interests of justice and the validity of the judgment would best be served by denying K–Mart's Motion.[7] All parties were informed of that decision by 5:00 p.m., and the Marshal's Office commenced its seizure. Plaintiffs' seized $52,732 during the execution of the writ. This currency is the subject of the current motion.

Finally, on Tuesday, February 13, 1996, K–Mart filed a supersedeas bond in the amount of $2,000,000 with the Clerk of Court and filed Notice with this Court. As soon as the Court was made aware of the filing of the bond, an order was signed, at 1:45 p.m. February 13, 1996, staying all further execution of the judgment.[8]

### DISCUSSION

The central issue before the Court is whether the approval of supersedeas bond, and the granting of a stay pending appeal, serves to vitiate any execution of judgment taken prior to the approval of the bond. After careful consideration of the policies underlying FRCP 62, applicable caselaw, and the equities in the case, this Court believes that it does not.

Courts have been split on the issue of the retroactive effect of FRCP 62(d) stays. *See Imperial Commodities Corp. v. Auxiliadora,* 115 F.R.D. 305 (S.D.N.Y.1987) (declining to rule on jurisdictional issues, but stating in dictum that if given the opportunity, the court would rule that the stay is retroactive); *Ascher v. Gutierrez,* 66 F.R.D. 548 (D.C.Col. 1975) (the stay is retroactive); *Sheldon v. Munford,* 128 F.R.D. 663 (N.D.Ind.1989) (finding retroactivity and abrogating writs of execution in other jurisdictions); *Santos v. Joss Organization, Inc.,* 682 F.Supp. 905 (E.D.Mich.1988) (no retroactivity); *Secure Engineering Services Ltd. v. International Technology Corp.,* 727 F.Supp. 261 (E.D.Va. 1989) (no retroactivity).

As the above facts show, K–Mart was, or should have been, on notice from November

---

**7.** Another factor which the Court took into account was the fact that it had previously refused to order the Marshal to execute on the judgment. By not granting Plaintiffs' motion, the Court maintained its position that it would not interfere with the legal process of executing a judgment. The Court's inclination to steer clear of this aspect of the case was reaffirmed in the denial of K–Mart's emergency motion.

Executions of judgment are meant to be extrajudicial, almost perfunctory, and without any compelling reason to become involved, the Court believed, and still believes, that the best course of conduct is to allow the procedures to take care of themselves.

**8.** K–Mart has represented in newspaper accounts that it attempted to wire the money for the bond to the Court at 5:10 p.m. on February 12, 1996. According to a Shawn Kahle, K–Mart attempted to contact the Court at 5:10, but nobody was in chambers. *See, e.g.* Robert Berner, *Boys in Blue Special: Registers at 2 K–Marts Cleaned out by Feds,* The Wall Street Journal, February 13, 1996 (attached to K–Mart's Motion papers). The Court notes it has an answering machine, which was on and operating, but no message was left.

Further, the Court finds it curious that K–Mart requested a stay until February 15, 1996 on the basis that it could not secure sufficient funds for the bond until that time. Ten minutes after the motion for an emergency stay was denied, K–Mart claims that it attempted to wire the money, but that "Nobody was in court to receive the call." *Id.*

The Court finds it equally surprising that K–Mart represents that it had the money ready to wire as of 5:10 p.m. February 12, 1996, but still filed *another* Motion for Emergency Stay in the United States Court of Appeals for the Eleventh Circuit at 9:45 p.m. February 12, 1996 in which it requested until February 15, 1996 at 5:00 p.m. to file the bond!

Finally, the Court notes that even after all of these representations, it was not until 1:00 p.m. February 13, 1996, that this Court was finally presented with a supersedeas bond for approval.

14, 1995, until Plaintiffs' seizure of K–Mart's assets on February 12, 1996, that it was responsible for satisfying the judgment. Applicable caselaw, and the scope and intent of FRCP 62(d) compels the finding that unless and until a stay of execution of judgment is granted, the assets of the responsible party are ripe for seizure. *See Kaplan v. Hirsh,* 696 F.2d 1046, 1047–48 (4th Cir.1982); *Larry Santos Productions v. Joss Organization, Inc.,* 682 F.Supp. 905 (E.D.Mich, 1988); *In re Bucyrus Grain Company, Inc.,* 127 B.R. 52, 54 (D.Kan.1991) ("When a supersedeas bond and stay are not obtained within the automatic ten-day stay period ... an appellee may execute judgment or initiate other proceedings for enforcement"). Accordingly, it has been held that a losing party may not file a supersedeas bond after execution on the full amount of judgment has been carried out. *See United States v. $2,490.00 in U.S. Currency,* 825 F.2d 1419, 1421 (9th Cir.1987) (where plaintiff has already seized assets sufficient to cover the full cost of judgment, defendant's right to post a supersedeas bond has dissolved); *In the Matter of Leach,* 1989 WL 134600 at *1 (D.Kan.1989) ("Although Rule 62(d) provides that a bond may be given at any time after the notice of appeal, a supersedeas bond must be filed prior to the execution of judgment"). Further, under FRCP 62(d), a stay is not effective until the approval of the bond is given by the Court. *See McKee v. AMAF Industries, Inc,* 1981 WL 136 (D.C.Md.1989) (to allow a stay to become effective without the posting and approval of the bond would be "an exercise in futility and in derogation of the purpose of Rule 62(d)").

Until K–Mart finally posted its supersedeas bond, Plaintiffs were well within their rights in enforcing their valid writ of execution. Thus, the seizure of the subject currency, pursuant to a valid writ of execution and prior to the posting of the bond, was a proper procedure for Plaintiffs to guarantee their rights. Once the automatic stay provisions of FRCP 62(a) have expired, the enforcement of a judgment becomes a race between Plaintiffs (seeking to seize assets to secure a judgment) and Defendant (posting an approved supersedeas bond to avoid the embarrassment of public seizure). In essence, in this case Plaintiff won at least part of the race.

It seems non-sensical to argue that K–Mart should be allowed to let Plaintiffs bear the expense of executing the judgment, and then, after execution has ensued, post its supersedeas and restore all seized assets. This procedure would surely subvert the spirit and intent of FRCP 62(d). Of course, the seized funds, and any applicable interest they accrue during the appeal, may be used to offset the ultimate liability, if any, of K–Mart. Further, if K–Mart is victorious in its appeal, it will be entitled to receive those funds and any interest they accrue.

Given the caselaw discussed above it is apparent that the procedure contemplated under FRCP 62(d) does not allow a defendant to sit back, wait for plaintiff to execute judgment, and then post a supersedeas bond with the full expectation that any seized assets will be promptly returned. In this case, K–Mart has argued that this Court's "refusal" to give K–Mart an appropriate time to get its bond together should compel the Court to find that the equities favor K–Mart's petition for return of funds. The facts of this case demonstrate that no such considerations exist. Counsel for K–Mart should have been well aware that the posting of a supersedeas bond must include an amount in excess of the base judgment. Further, K–Mart must also have been aware that Plaintiffs, victorious in a Title VII discrimination case are *automatically* entitled to attorney's fees and costs. If K–Mart was surprised by the Court's order that the bond be set at $2,000,000, the fault lies in counsel's failure to take into account applicable caselaw surrounding the setting of bonds. *See, e.g., North River Insurance Co. v. Greater New York Mutual Insurance Co.,* 895 F.Supp. 83, 84 (E.D.Pa.1995) ("a stay should be granted if a supersedeas bond includes the amount of the judgment as well as post-judgment interest, and, if recoverable, counsel fees and costs," as well, the Court determined that plaintiff would also be "entitled to post-judgment interest and reasonable attorney's fees expended in preparation of appeal").

In the end, the Court finds that the granting of a stay pursuant to FRCP 62(d) does not take effect until the approval of a supersedeas bond. Until such time as approval is given, a plaintiff has the right to enforce any valid writ of execution it may have. The granting of a stay, post-execution, does not make any prior seizures null and void absent extraordinary exigent circumstances. Such circumstances do not exist in this case, and therefore, K–Mart's motion was *DENIED.*

DONE AND ORDERED.